**Calvin L. MIOTKE,**
**Petitioner-Appellant,**

v.

**Dale KELLEY, Commissioner, Tennessee Department of Employment Security and Lear Siegler, Inc., Respondents-Appellees.**

Court of Appeals of Tennessee,
Western Section, at Knoxville.

April 23, 1986.

Application for Permission to Appeal
Denied June 16, 1986.

Michael C. Murphy, Morristown, for petitioner-appellant.

William R. Seale, Morristown, for respondent-appellee, Lear Siegler, Inc.

W.J. Michael Cody and Dianne Stamey, Nashville, for Tennessee Dept. of Employment Sec.

CRAWFORD, Judge.

Appellant, Calvin L. Miotke (hereinafter Miotke) appeals from the judgment of the Chancery Court affirming the decision of the Employment Security Board of Review which denied unemployment benefits.

A review of the record before the Board of Review reveals the following: Miotke was employed by Lear Siegler, Inc., from September 19, 1983, until his discharge on November 21, 1984. Miotke is an alcoholic and Lear Siegler granted him an extended leave of absence from February 23, 1984, until April 9, 1984, within which to obtain treatment for this condition. Concerning his absences in the year 1984, we quote the testimony of the employer's representative, Ms. Hudgen:

> ... in regard to the employee, Calvin Miotke, who was hired 10–19–83. January '84, he missed four days work, and he was given an oral warning. From

February 23rd to April 9, he was on a leave, a sick leave, for one and a half months. When he returned in May he missed two days. In June he missed one day. June the 21st, he was laid off, and recalled July the 8th. August the 1st, he missed one day. Then in September, he missed four days again, and was given another oral warning. October, he missed two days, and was given a written warning. Around the first half of November, he missed three days, and was given a final warning, and told that he would be terminated if any more days were missed. Then he missed two more days in November, making a total of five days, and he was terminated on 11–21–84, which made a total of twenty days absent, plus a forty five day leave in '84. So we terminated him for absenteeism.

Miotke was hospitalized for treatment of his alcoholism on November 21, 1984, the date his employment was terminated, and was released December 19, 1984. He reported to his employer that he was ready to return to work, but was informed that he could not return. His application to the Department of Employment Security for unemployment benefits was denied and, upon his appeal, the department's appeals tribunal conducted a hearing and concluded that he had been discharged because of misconduct connected with his work. He was denied benefits pursuant to T.C.A. § 50–7–303(2)(B) (1983) which provides as pertinent here:

50–7–303. *Disqualification for benefits.* An individual shall be disqualified for benefits:

\*    \*    \*    \*    \*    \*

(2)(B) If the commissioner finds that an individual has been discharged from his most recent work for misconduct connected with his work (other than the gross misconduct mentioned in subdivision (2)(A) of this section), he shall be disqualified for the duration of the ensuing period of unemployment and until he has secured subsequent employment covered by an unemployment compensation law of this state, or another state, or of the United States, and earned thereby ten (10) times his weekly benefit amount;

Miotke appealed to the department's Board of Review which affirmed the denial of benefits and upon the Chancery Court's affirmance of the Board of Review, this appeal ensued.

Miotke has presented two issues for review which we have rephrased as follows:

1. Whether there is substantial and material evidence in the record to support the Board of Review's findings of fact.

2. Whether the petitioner's absenteeism constituted misconduct as a matter of law within the meaning of T.C.A. § 50–7–303(2)(B).

The scope of review of the trial court and of this Court is set forth in T.C.A. § 50–7–304(i) (1983):

... In any judicial proceeding under this section, the findings of the board of review as to the facts, if there be any evidence to support the same, shall be conclusive and the jurisdiction of said court shall be confined to questions of law....

The Board of Review adopted the appeals tribunal's findings of fact which we quote:

FINDINGS OF FACT: Claimant's most recent employment prior to filing this claim was with Lear Siegler from September 19, 1983, until November 30, 1984. He received several warnings concerning absenteeism during this employment. He was absent approximately 20 days during the last year. Claimant is an alcoholic to whom the employer at one point granted a leave of absence in order to be treated for the problem. In accordance with the union contract employees are considered to have voluntarily quit their jobs or lose their seniority in the event that they are absent for three consecutive days or for a total of five days in any one month. The employer's work rules state that excessive tardiness or absenteeism will not be tolerated. Also employees are to report the reason for an absence to their foreman or the personnel office no later than the second day of

absence and give the foreman advance notice when possible. Claimant was absent November 7, 1984, November 12, 1984, November 15, 1984, November 20, 1984, and November 21, 1984. He did call the employer on November 12, 1984, to state that he had a dental appointment. After the third absence during the month of November he was told that if he missed any further work he would be terminated. He was absent again on November 21, 1984, without reporting and on the [sic] November 22, 1984 [1], his wife notified the employer at approximately 12:00 p.m. that he had entered the hospital on that day for further treatment for alcoholism. At that time the employer informed her that he had been discharged for excessive absenteeism. He did submit medical evidence at the Appeals Tribunal hearing indicating that he was receiving medical treatments for alcoholism from November 21, 1984, until December 19, 1984.

Miotke asserts that the provisions of the collective bargaining agreement between the employer and his union establish procedures concerning absenteeism, that he did not violate the procedures and that he is entitled to rely upon the provisions of the agreement which we quote:

> Section 3. Except as provided in (a) of this Section, an employee shall be considered as having voluntarily quit, and he shall lose his seniority in the event that,
>
> (a) He is discharged and not reinstated.
>
> (b) He quits voluntarily.
>
> (c) He exceeds a leave of absence.
>
> (d) However, employees who remain off the active payroll of the Company because of layoff or medical leave shall not lose their seniority for the life of this Agreement, provided that they report to the Company their current address and willingness to return to work at six (6) month intervals. Copies of such reports will be supplied to the employee and Union President.

> (e) He fails to report back to work within five days after notice is received to return to work by personnel contact, whenever possible, by registered mail or telegram.
>
> (f) He is absent from work for three (3) consecutive days or a total of five (5) days in any one (1) month.
>
> An employee shall not lose his seniority in the case specified in (c), (e), and (f) of this Section if his absence from work is on account of actual sickness or reasons beyond his control, provided the employment office of the Company is notified to such effect within seventy-two (72) hours after his absence from work began, and provided further that upon his return to work the employee, if requested by the Company, can provide satisfactory proof of the reason for his absence....

Miotke contends that the administrative board's findings of fact are not supported by substantial and material evidence because the facts do not support a violation of the company's five-day absence rule. Concerning this contention we quote from the Chancellor's memorandum opinion as amended:

> Petitioner's reliance upon this provision is misplaced. It admittedly provides criteria to be used by the employer in determining when an employee has voluntarily quit, and obviously it also provides criteria regarding the loss of seniority. However, it does not purport to be an exclusive and exhaustive listing of criteria regarding reasons for termination insofar as "excessive absenteeism" is concerned. If this particular contract provision were so construed, then any employee could chronically miss up to four days each and every month of the year, regardless of reason, and not be subject to discharge for cause. The record in this cause amply supports the Commissioner's position that the petitioner had a pattern of absenteeism, that he was warned that an additional absence during the month of November, 1984, would result in his ter-

---

**1.** These last two dates are obviously erroneous as the entire record clearly shows the correct dates to be November 20 and November 21 respectively.

mination, that notwithstanding such warning he was absent on November 20, 1984, and was discharged on that day, and it was not until the day following that petitioner's wife called the employer to advise the employer that the petitioner was hospitalized for treatment of alcoholism. In conclusion, there is more than ample evidence to support the Board's findings that the petitioner was excessively absent from his work.

■ We concur in the trial court's statement above and find from our review of the administrative record that there is material and substantial evidence that Miotke was excessively absent from his work.

■ Now we turn to the cause and effect of such absences. Miotke does not contest that he was absent on the dates asserted by the employer, but states that this does not constitute misconduct in connection with his work because he was absent as a result of his alcoholism. He contends that this is an illness and that he should not be guilty of misconduct in connection with his work since he was ill.

The unemployment compensation law was enacted for the benefit of the unemployed, and since the disqualification for benefits because of misconduct is penal in nature, a liberal construction of the statute in favor of the employee is required. *Weaver v. Wallace,* 565 S.W.2d 867 (1978). The legislature provided no definition of misconduct connected with the employment, therefore misconduct within the meaning of T.C.A. § 50–7–303 must be determined on a case by case basis. *Troutt v. Carl K. Wilson Co.,* 219 Tenn. 400, 410 S.W.2d 177 (1966). The burden of proving the disqualification for benefits rests on the employer. *Weaver v. Wallace, supra* at 870.

Excessive absenteeism may constitute misconduct warranting the denial of unemployment benefits, but that level of absenteeism must be determined on an ad hoc basis. *Wallace v. Stewart,* 559 S.W.2d 647 (Tenn.1977). In *Wallace,* Justice Fones said:

No aspect of contract of employment is more basic than the right of the employer to expect employees will appear for work on the day and at the hour agreed upon. Persistent failure to honor that obligation evinces a substantial disregard for the employer's interest and may justify a finding of misconduct connected with the employment.

*Id.* at 648.

The proof before us is uncontroverted that Miotke is an alcoholic and that this was a cause of his absences. The employer had previously granted Miotke a lengthy leave of absence in order for him to obtain treatment of this condition. Notwithstanding this treatment, Miotke continued to have absences related to the condition and more significantly he was absent without notifying the employer. In 1984, Miotke was warned several times concerning his absenteeism and in November, 1984, was specifically warned of his possible termination if he had one more absence. On November 20, 1984, he had this absence without notifying the employer. As noted in appellee Kelley's brief:

An employee has the duty to appear for work when scheduled. The failure of an employee to report for work may constitute misconduct. The petitioner received four warnings that his absenteeism would result in termination. The petitioner chose to ignore these warnings and again failed to appear for work without calling in. Such conduct constituted misconduct connected with employment and the petitioner should have foreseen termination.

We find from the record that there is material and substantial evidence of Miotke's excessive absenteeism and that the nature of the absenteeism and the circumstances under which it arose constituted misconduct in connection with his work within the meaning of T.C.A. § 50–7–303(2)(B). Therefore we affirm the judgment of the Chancery Court. Costs are assessed against the appellant.

HIGHERS, J., and BLACKBURN, Special Judge, concur.