Cornelia SIMMONS, Plaintiff/Appellant,

v.

Margaret CULPEPPER, in her capacity as Commissioner of the Tennessee Department of Employment Security; and Occidental Chemical Corporation, Defendants/Appellees.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 30, 1996.

Permission to Appeal Denied by
Supreme Court Dec. 23, 1996.

David Kozlowski, Legal Services of South Central Tennessee, Inc., Columbia, for plaintiff/appellant.

Charles W. Burson, Attorney General and Reporter, Robert W. Stack, Pursuant to Rule 7, Article 10.03, Rules of the Supreme Court of Tennessee, Jennifer H. Small, Deputy Attorney General, Nashville, for defendant/appellee Margaret Culpepper, Commissioner of the Tennessee Department of Employee Security.

N. Houston Parks, Trabue, Sturdivant & DeWitt, Columbia, for defendant/appellee Occidental Chemical Corporation.

*OPINION*

LEWIS, Judge.

This is an appeal by plaintiff/appellant, Cornelia Simmons, from the judgment of the chancery court which upheld the decision of defendant/appellee, Tennessee Department of Employment Security ("the Department"), to deny plaintiff unemployment benefits.

## I. FACTUAL HISTORY

Defendant/appellee, Occidental Chemical Corporation ("Occidental"), hired plaintiff on 16 February 1987. Occidental informed plaintiff when they hired her that they expected employees to have an absentee rate of no more than two percent a year. While employed with Occidental, plaintiff received several warnings concerning her job performance, her job-related injuries, and her absentee rate. On 28 October 1987, Occidental terminated plaintiff. Richard R. Karcher, Occidental's human resource manager at the time of plaintiff's employment, testified that Occidental terminated plaintiff based on the totality of her record.

While working at Occidental, plaintiff performed two jobs. The first was in the metal yard where plaintiff broke metal with a sledge hammer and loaded it into pans. Occidental expected employees to fill a certain number of pans per day. Plaintiff's second job title was "tapper helper." Plaintiff described a tapper helper as one who "helps set up for a metal tap and between setting up for a metal taps, [does] slag taps...."

During her eight months on the job, three different investigators filled out a total of five accident investigation reports involving injuries received by plaintiff. On 2 March 1987, the investigator wrote: "Employee picked up a piece of metal to put into metal pan, the metal slipped from her left hand and scratched her left arm." Fourteen days later, another investigator wrote: "Employee was standing in hallway of #1 fce when nodules fell from Burden Bin hitting employee on Back and Hands." The third investigator filled out two reports on 3 May 1987. In the first, he wrote: "[S]he rubbed up against a feed chute casting, getting acid on her shirt. At about 12:N, she called the board room and said there was something hot on her shirt." In the second, he wrote: "[S]he started to climb down and slipped and fell on the roof. No one had seen her fall." Lastly, on 11 May 1987, Mack Whiteside filled out an accident report because plaintiff "was pitching metal into metal pan, when her

middle right finger struck [the] pan." In two of these reports, plaintiff is to some extent blamed for the accident. In the 2 March report, the investigator stated: "Employee said her gloves were loose and caused metal to slip" and checked "Lack of Knowledge or Skill" under a section of the report. In the 11 May accident report, the investigator concluded that plaintiff "was standing too close to [the] pan, [f]ailure to watch for [the] pan."

Occidental considered plaintiff a probationary employee until 17 May 1996. While on probation, plaintiff received weekly evaluations from her supervisors. Of the 65 scores received during the evaluation period, plaintiff's supervisors rated her as good 44.62 percent of the time, as marginal 38.46 percent of the time, and as unsatisfactory 16.92 percent of the time. Occidental claimed that it would not retain a probationary employee with these scores, but it had made an exception in plaintiff's case in order to salvage a female employee.

A third reason for plaintiff's termination was her attendance record. During her eight months on the job, plaintiff had multiple absences. The following chart lists the dates on which she was absent or tardy and provides a brief explanation of the reasons given for the absences.

| | |
|---|---|
| 2/27/89 | Plaintiff missed 7 hours because of a fever. |
| 3/2/89 | Plaintiff missed 1 hour because of a work-related injury. (authorized) |
| 4/3/89 | Plaintiff missed 1 day because of a sinus infection. |
| 4/14/89 | Plaintiff missed 1 day because of an at-home injury. |
| 5/3/89 & 5/4/89 | Plaintiff missed 2 days because of a work-related injury. |
| 5/15/89 | Plaintiff missed half an hour because of personal business. |
| 5/23/89– 5/26/89 | Plaintiff missed 4 days because of a bronchial infection. |
| 5/30/89– 6/15/89 | Plaintiff missed 11 days due to a work-related injury. |
| 6/16/89– 6/18/89 | Plaintiff missed 3 days due to a disciplinary suspension. |
| 6/19/89 | Plaintiff missed 2 hours. (authorized) |
| 7/8/89 | Plaintiff missed 5.5 hours. (authorized) |
| 8/3/89– 8/7/89 | Plaintiff missed 5 days due to a disciplinary suspension. |
| 8/19/89 | Occidental granted plaintiff permission to miss one day to tend to her personal business. |
| 8/21/89 | Occidental granted plaintiff permission to miss one day to tend to her personal business. |
| 8/25/90 | Plaintiff missed 1 day because she slept late. |
| 9/3/89– 9/15/89 | Plaintiff missed 10 days due to a disciplinary suspension. |
| 10/19/89 | Plaintiff was 15 minutes late. |
| 10/22/89 | Plaintiff was 15 minutes late. |
| 10/23/89 | Plaintiff was 3.5 hours late because of car trouble. |

The information found in this chart came from Occidental's absentee report and other evidence in the record. Although the absentee report lists some absences as authorized or unauthorized,[1] the report fails to classify each absence. Thus, we have attempted to classify the absences based on the amount of time missed and the reason for the absence. All totaled, plaintiff was either absent or tardy 48 days. She missed portions of 5 days and was tardy 3 days. She missed the remaining 40 days entirely. Of these 40 days, plaintiff missed 18 for disciplinary reasons; 9 because of personal business, sickness, or oversleeping; and 13 because of work-related injuries.

As previously stated, plaintiff received various written and oral warnings. There are

---

1. Occidental required their employees to have an absentee rate of no more than two percent per year. When calculating an employee's absentee rate, Occidental included unauthorized absences, but did not include authorized or disciplinary absences.

five written warnings in the record. On 29 May 1987, plaintiff received two warnings. The first warned·that her job performance was poor and that future poor performance could result in disciplinary action including discharge. The second warning· stated that plaintiff had excessive absences and that Occidental would take disciplinary action if plaintiff's attendance did not improve. The third warning came on 16 June 1987. Occidental warned plaintiff that her job performance was poor, discussed her higher than average rate of on-the-job injury, and placed her on a three day suspension. On 3 August 1987, Occidental warned plaintiff that her production in the metal yard was less than other employees and placed her on a seven day suspension. The final warning came a month later. Occidental recognized that plaintiff's production had improved, but maintained that it was still below that of other employees. Moreover, Occidental complained of plaintiff's absentee rate. Finally, the warning placed plaintiff on a two week suspension and stated that Occidental would terminate plaintiff if her job performance did not improve.

There is evidence of three oral warnings or discussions. During the first discussion the participants discussed plaintiff's performance, her absentee rate, and her complaints regarding several male employees. Five days later, plaintiff's supervisor reviewed plaintiff's weekly evaluations with her. Finally, on 1 September 1987, there was some discussion regarding plaintiff's attendance record and her production. Richard R. Karcher told plaintiff that Occidental was going to suspend her for two weeks and that this was her final chance.

## II. PROCEDURAL HISTORY

After being terminated, plaintiff applied for unemployment benefits. The Department denied plaintiff's application because it found she was guilty of misconduct based on her absentee rate, her job performance, and her safety record. Plaintiff filed an administrative appeal. Following a hearing, the Ap-

peals Tribunal affirmed the denial, and the Board of Review ("the Board") concurred. Plaintiff appealed the case to the chancery court, the court of appeals, and the Supreme Court. The Supreme Court concluded that the Department had not properly notified plaintiff of her right to counsel. Thus, the Supreme Court remanded the case for a new hearing.

On remand, the Board held a de novo hearing to determine whether plaintiff's absentee, work performance, and safety records evidenced misconduct. On 16 November 1993, the Board issued its decision denying plaintiff benefits pursuant to Tennessee Code Annotated section 50–7–303(a)(2).[2] In its decision, the Board made the following findings of fact and conclusions of law:

> The claimant was discharged for poor job performance, having excessive and careless accidents and excessive absenteeism.
>
> ... The claimant alternated between two jobs in the plant, a yard laborer and tapper helper. Both of these jobs were physically demanding, particularly the yard laborer job.... The claimant was warned and disciplined at various times during her employment for failure to perform satisfactorily on both of these jobs. However, we find that the claimant made a reasonable effort to perform these jobs, but lacked the wherewithal to perform them up to the employer's standards.
>
> The claimant was also disciplined for having excessive and/or careless accidents.... However, the evidence is not sufficient for us to find as fact that the claimant was at fault in any of these accidents.
>
> ....
>
> CONCLUSIONS OF LAW: The Board of Review holds that the claimant is disqualified for benefits under TCA 50–7–303(a)(2) because she was discharged for misconduct connected with work.... In our opinion, the claimant's conduct was careless or negligent to the extent that it demonstrated a substantial disregard of her obligations.

2. This section provides that the Department may deny benefits to a claimant if it finds the claimant "has been discharged from such claimant's most recent work for misconduct connected with such claimant's work...." TENN.CODE ANN. § 50–7–303(a)(2) (1991 & Supp.1995).

The claimant had numerous problems during her employment with Occidental Chemical, for which she was repeatedly warned and otherwise disciplined. Significant among these problems was her rate of absenteeism.

The Board later denied plaintiff's request for a rehearing.

Plaintiff filed a complaint in the chancery court and moved for a judgment on the pleadings. On 30 November 1995, the chancery court entered an order holding that the record before the Board contained substantial and material evidence of plaintiff's pattern of unsatisfactory job performance, excessive absenteeism, and repeated tardiness. Thereafter, plaintiff filed her notice of appeal.

On appeal, plaintiff contends that the trial court erred in affirming the decision of the Board. In support of their contention, she makes the following two arguments:

I. The chancery court erred in affirming the decision of the Board of Review because the Supreme Court of Tennessee has already determined that Cornelia Simmons was not guilty of misconduct based upon allegations of absenteeism.

II. This administrative record fails to contain substantial and material evidence to support the Department's legal conclusion that Cornelia Simmons was guilty of misconduct because of excessive absenteeism/tardiness.

We address each argument separately.

### III. THE EFFECT OF THE SUPREME COURT'S DECISION

Plaintiff argues that the Supreme Court determined that plaintiff's absentee rate did not constitute misconduct. Specifically, plaintiff relies on the following language in the Supreme Court's opinion:

In finding that Plaintiff was guilty of misconduct, the Appeals Tribunal focused on absenteeism and tardiness.... The key element appears to be the tardiness, along with the excessive absenteeism.... Unexcused and unjustified absenteeism can be a basis for a finding of misconduct.

The record, however, shows that most of Plaintiff's absences were for illnesses and job-related injuries. An employee can be fired for excessive absenteeism due to illness and injuries. Absences due to illness and job injuries, however, do not constitute misconduct under the Employment Security Law. Other than illness and injury related absences, Plaintiff missed work on the days she was suspended, and she took time off with permission in August for personal reasons. The only day plaintiff was absent without cause was when she overslept on August 25.

*Simmons v. Traughber,* 791 S.W.2d 21, 26 (Tenn.1990) (citations omitted). Plaintiff claims that these finding have become the law of the case and are not subject to further review by the Board or by this court. Defendants counter that the statement are dicta and that the law of the case doctrine does not apply to dicta.

"The doctrine of the law of the case generally prohibits reconsideration of issues which have been decided in a prior appeal in the same case...." 5 AM.JUR.2D *Appellate Review* § 605 (1995). The doctrine applies when the facts of the case have gone unchanged. *Barnes v. Walker,* 191 Tenn. 364, 374, 234 S.W.2d 648, 652 (1950). Courts apply the doctrine "to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts." 5 AM.JUR.2D *Appellate Review* § 605 (1995).

The law of the case doctrine does not apply to mere dictum. *Schoen v. J.C. Bradford & Co.,* 667 S.W.2d 97, 101 (Tenn.App.1984); *see Johnson Bank v. Bryant, Price, Brandt, Jordan and Williams,* 744 S.W.2d 581, 584 (Tenn.App.1987). Sometime ago, the Supreme Court discussed the meaning of the term dictum. It stated as follows:

Courts sometimes go beyond the point necessary for a decision in a lawsuit and make expressions on certain things there involved which are not necessary for a determination of the lawsuit. Such statements by a court are known as dictum.

The term 'dictum' is an abbreviation of 'obiter dictum' which means generally a remark or opinion uttered by the way. Obviously the very definition of the term shows that it has no bearing on the direct route or decision of the case but is made aside or on the way and is, therefore, not a controlling statement to courts when the question rises again that has been commented on by way of dictum.

*Staten v. State*, 191 Tenn. 157, 159–60, 232 S.W.2d 18, 19, (1950). Thus, the issue before this court becomes whether the Supreme Court's statements regarding plaintiff's absentee rate were dictum.

The issue before the Supreme Court was whether the Board had violated plaintiff's right to a fair hearing by failing to give her sufficient notice of her right to counsel. *Simmons*, 791 S.W.2d at 22. The Court found that the notice was insufficient because it failed to inform plaintiff of the possible availability of free or low-cost representation. *Id.* at 24. The Court then recognized that the law would not entitle plaintiff to a new hearing unless the lack of counsel prejudiced plaintiff's case. *Id.* at 25.

It was during its discussion of prejudice that the Court addressed the facts surrounding plaintiff's absentee rate. The Court discussed the reasons for plaintiff's absences and the fact that the evidence of the days she was tardy was hearsay. The Court then concluded as follows:

> A competent attorney, through efficient cross-examination and introduction of medical records, may have been able to show that Plaintiff was absent so frequently because of injuries and poor health.
>
> . . . The proof that Plaintiff was tardy on the 19th and 22nd, however, was hearsay. A witness for the employer testified that a guard told him that Plaintiff had arrived at work late those days. The guard was not present and did not testify at the hearing. A competent attorney would have objected to this hearsay testimony.

*Id.* at 26. We are of the opinion that it was necessary for the Court to analyze the factual evidence and the law to determine whether the lack of counsel prejudiced plaintiff's case. Thus, the factual findings of the Court and its statements of the law were not dicta and became the law of the case.[3]

■ Plaintiff did not argue, however, that the factual findings and the law as stated by the Court became the law of the case. Instead, plaintiff argued that the Court concluded that her attendance record constituted misconduct as a matter of law and that this conclusion became the law of the case. We can not agree with plaintiff's argument. We are of the opinion that the Court set forth the law and the facts without making any legal conclusion. The Court simply concluded that a competent attorney may have been able to make the necessary arguments. Thus, while the statements of the law and the factual findings became the law of the case, the legal conclusion that plaintiff was terminated due to her misconduct did not.

## IV. WEIGHT OF THE EVIDENCE

### A. STANDARD OF REVIEW

This court may reverse, remand, or modify the decision of the board if the findings, inferences, conclusions, or decisions are "[u]nsupported by evidence which is both substantial and material in the light of the entire record." TENN.CODE ANN. § 50–7–304(i)(2)(E) (1991); *accord Armstrong v. Neel*, 725 S.W.2d 953, 955 (Tenn.App.1986). When determining the sufficiency of the evidence, this court must "take into account whatever in the record fairly detracts from its weight, but [it] shall not substitute [its] judgment for that of the board of review as to the weight of the evidence on questions of fact." TENN.CODE ANN. § 50–7–304(i)(3). Thus, our review in this case involves a determination of whether there is substantial and material evidence to support the Board's legal conclusion that plaintiff's actions constituted misconduct. We are of the opinion

---

3. Although some courts apply the law of the case doctrine only to legal issues, the Tennessee Supreme Court has applied the doctrine to both legal and factual conclusions. *See Carson v.* *Nashville Bank & Trust Co.*, 204 Tenn. 396, 401, 321 S.W.2d 798, 801 (Tenn.1959); 5 AM.JUR.2D *Appellate Review* § 609 (1995).

that the Board's conclusion is properly supported.

## B. LAW OF MISCONDUCT

▮ The General Assembly has not seen fit to provide a definition of the term misconduct as it is used in Tennessee Code Annotated section 50–7–303(a)(2). Nevertheless, Tennessee's case law provides guidance as to this issue. This court is to construe unemployment compensation statutes liberally. *Weaver v. Wallace,* 565 S.W.2d 867, 869 (Tenn.1978). Moreover, the disqualification from benefits based on misconduct connected with employment is penal in nature, and courts must construe the disqualification liberally in favor of the employee. *Id.*

From the law of the case, we know that "[a]n employee can be fired for excessive absenteeism due to illnesses and injuries," but that "[a]bsences due to illness and job injuries ... do not constitute misconduct under the Employment Security Law." *Simmons,* 791 S.W.2d at 26. Also, Tennessee's courts have often held that an essential element of misconduct is a "breach of duty owed to the employer, as distinguished from society in general." *Weaver,* 565 S.W.2d at 870. In a detailed opinion of this court, we adopted the following standard regulating the determination of misconduct:

> conduct evincing such willful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of

the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertences or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

*Armstrong,* 725 S.W.2d at 956 (quoting *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636, 640 (1941)).[4]

Turning to the facts, the findings of the Board and of the Supreme Court are similar. The law of the case, as established in the Supreme Court's decision, is as follows: 1) plaintiff missed one day, August 25th, without cause; 2) plaintiff took time off in August with permission for personal reasons; and 3) all other absences were due to illness, injury, and suspensions. The Board found that "[m]any of her absences were not her fault, but some were." Specifically, the Board discussed plaintiff's warnings and disciplinary record, the August 25th absence, and the three days plaintiff was late for work in October.[5]

Plaintiff was absent a total of 45 days and was tardy a total of 3 days. Of the 45 days, plaintiff missed time on 21 days because of illness or work-related injuries. In addition, she missed 18 of the 45 days due to Occidental's use of disciplinary suspensions.

Not including her illnesses, injuries, and suspensions, plaintiff was absent 6 days. Of the 6 absences, 2 were authorized and 2 were with permission. The remaining 2 absences include 15 May. On that day, plaintiff missed one-half hour of work for personal business. The record is not clear whether

---

4. In *Armstrong,* the court noted that the appropriateness of the *Boynton* definition to Tennessee cases had been questioned because Tennessee's statutes differentiated between gross and simple misconduct. *Armstrong,* 725 S.W.2d at 956. Nevertheless, the court determined that it could continue to use the *Boynton* standards for simple misconduct cases. *Id.* In 1987, the General Assembly amended Tennessee Code Annotated section 50–7–303(a)(2) and eliminated the distinction between simple and gross misconduct. 1987 Tenn.Pub.Acts ch. 368. Thus, we are of the opinion that the *Boynton* standard is still appropriate under the unemployment compensation

statutes as they exist today. *See Lyons v. Metal Bldg. Prods., Inc.,* No. 02A01–9404–CH–00082, 1994 WL 669526, at *3 (Tenn.App.1994).

5. The Supreme Court discussed the three days plaintiff was late in October. The Court did not, however, make any findings of fact in regard to the days. Instead, the Court noted that a competent attorney would have objected to the hearsay evidence used by defendants to prove that plaintiff was late on two of the days. *Simmons,* 791 S.W.2d at 26.

plaintiff received permission, but she must have told Occidental that she used the time to tend to personal business because their attendance report lists personal business as the reason for the absence. The second remaining absence was on 25 August, the date discussed by the Supreme Court.

For the purposes of this opinion, we treat the May 15th absences as if plaintiff received permission. The burden of proving a disqualification to receive benefits is on the employer. *Weaver*, 565 S.W.2d at 870; *Miotke v. Kelley*, 713 S.W.2d 910, 913 (Tenn. App.1986). Occidental has not provided any proof that this absence was for reasons which would constitute misconduct. Moreover, this court may take into account whatever in the record fairly detracts from the weight of the evidence. TENN.CODE ANN. § 50–7–304(i)(3) (1991).

## C. CONCLUSION

Considering all of the facts, it is the opinion of this court that, while on the surface of the case it appears that plaintiff only missed work or was late for work without cause, authorization, or permission a total of 4 days, the whole of the facts reveal that these actions exhibit a wanton, careless, and negligent disregard for the interest of Occidental. To explain, plaintiff received two written warnings concerning her attendance record. The 3 September warning was plaintiff's final warning. It mentioned both plaintiff's production level and her absentee rate. Moreover, the warning explained that Occidental would terminate plaintiff if her performance did not improve. She also received two oral warnings regarding her attendance record. During one of these discussions on 1 September, Richard Karcher informed plaintiff that this was her final chance. Despite the clear dissatisfaction of Occidental with plaintiff's attendance record and its intent to terminate her if her record did not improve, plaintiff was late 3 days in October. There is no excuse for the two days plaintiff was fifteen minutes late. Although plaintiff had car trouble on the third day, this does not explain why she was three and one-half hours late. At the very least, it is the opinion of this court that plaintiff's actions exhibited a careless disregard for the interest of her employer, Occidental.

## V. CONCLUSION

Therefore, it results that the judgment of the trial court is affirmed, and the case is remanded for any further necessary proceedings. The costs of the case are taxed to plaintiff/appellant, Cornelia Simmons.

CANTRELL and KOCH, JJ., concur.