IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 1, 2002 Session

# CHATTANOOGA AREA REGIONAL TRANSPORTATION AUTHORITY v. GERALD D. AUTRY, ET AL.

### Appeal from the Chancery Court for Hamilton County
### No. 00-1073      Howell N. Peoples, Chancellor

### FILED APRIL 23, 2002

### No. E2001-01419-COA-R3-CV

This is an appeal by a former employee, Gerald D. Autry, of Chattanooga Area Regional Transportation Authority, seeking unemployment benefits. The Chancellor overturned the determination of the three separate Administrative Tribunals and found Mr. Autry was not entitled to unemployment compensation. We affirm.

### Tenn.R.App.P. 3 Appeal As of Right; Judgment of the Chancery Court Affirmed; Cause Remanded

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

Charles G. Wright, Jr., Chattanooga, Tennessee, for the Appellant, Gerald D. Autry

George M. Derryberry, Chattanooga, Tennessee, for the Appellee, Chattanooga Area Regional Transportation Authority

### OPINION

In this appeal Gerald D. Autry[1] contends that because he met the illness exception found in T.C.A. 50-7-303(a)(1), the Chancellor was in error in denying his claim for unemployment compensation on the ground that he did not have a medical examiner's certificate attesting to his

---

[1]    The Commissioner of Labor was made a party Defendant in the petition for judicial review filed in the Chancery Court and initially also filed a notice of appeal, which was later withdrawn. Still later, the Commissioner moved to be permitted to re-enter the case on appeal. This motion was denied.

being physically qualified to drive a commercial motor vehicle, the Chancellor's ruling overturned three separate findings of tribunals below.[2]

The Code Section Mr. Autry relies upon provides the following:

**50-7-303. Disqualification for benefits. --** (a) Disqualifying Events. A claimant shall be disqualified for benefits:

(1) If the administrator finds that the claimant has left such claimant's most recent work voluntarily without good cause connected with such claimant's work. Such disqualification shall be for the duration of the ensuing period of unemployment and until such claimant has secured subsequent employment covered by an unemployment compensation law of this state, or another state, or of the United States, and was paid wages thereby ten (10) times such claimant's weekly benefit amount. No disqualification shall be made hereunder, however, if such claimant presents evidence supported by competent medical proof that such claimant was forced to leave such claimant's most recent work because such claimant was sick or disabled and notified such claimant's employer of that fact as soon as it was reasonably practical to do so, and returned to that employer and offered to work as soon as such claimant was again able to work, and to perform such claimant's former duties. Pregnancy shall be considered in the same way as any other illness or disability within the meaning of this subsection. At the expiration of such period, if the claimant is not reemployed, such claimant shall be entitled to unemployment benefits hereunder, if otherwise eligible under the provisions of this chapter. Nor shall this disqualification apply to a claimant who left such claimant's work in good faith to join the armed forces of the United States.

We copy from the Chancellor's opinion the pertinent facts and the standard of review of the Board of Review's decision which is the same standard we employ in reviewing the Trial Court's determination. Ford v. Traughber, 813 S.W.2d 141 (Tenn. Ct. App. 1991):

Autry was employed by CARTA as a Body and Building Facility Technician from April 7, 1997 to April 24, 2000. This position requires that Autry maintain a commercial driver's license and medical certification from the Department of Transportation (DOT). Autry was forced to leave his employment for reasons that were not work related, as he was diagnosed with sleep apnea and narcolepsy. Autry began treatment for his condition and returned to CARTA for assignment. At this time Autry had a note from his physician, Daniel R. Smith,

---

[2] The determinations of the Agency, the Appeals Tribunal and the Board of Review.

M.D., stating that he was able to perform his duties. CARTA refused to allow Autry to return to work on the grounds that Autry was no longer qualified to perform the job.

  The Appeals Tribunal of the Department of Labor held a hearing on June 21, 2000 which afforded both CARTA and Autry an opportunity to present evidence. At that hearing, uncontested proof was presented establishing that Autry was required to a "Medical Examiner's Certificate" that certified his medical fitness to hold a commercial driver's license as a condition of his employment.

  . . . .

## II. STANDARD OF REVIEW

  The standard of review that the Court is to apply when reviewing the decisions of the Department of Labor regarding claims for unemployment compensation is set forth in Tenn. Code Ann. § 50-7-304(i)(2) which provides:

The chancellor may affirm the decision of the board or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(5) Unsupported by evidence that is both substantial and material in the light of the entire record.

  However, the Court does not defer to the Department of Labor's conclusions of law. Frogge v. Davenport, 902 S.W.2d 920, 922 (Tenn. Ct. App. 1995); Perryman v. Bible, 653 S.W.2d 424, 429 (Tenn. Ct. App. 1983); Irvin v. Binkley, 577 S.W.2d 677, 678 (Tenn. Ct. App. 1978).

  Additionally, the Court is instructed to interpret the disqualification provision liberally in favor of the employee. Simmons v. Culpepper, 937 S.W.2d 938, 944 (Tenn. Ct. App. 1996) citing Weaver v. Wallace, 565 S.W.2d 867, 869 (Tenn. 1978).

It is arguable that given the minimal driving of a commercial vehicle, shown in the record by Mr. Autry, and the fact that the vehicle was not driven on a public road, that the regulations are not applicable to him.[3] However, Section 8 of the petition seeking review of the Board of Review's determination, CARTA alleges the following, which is admitted in Mr. Autry's answer:

> 8. Defendant Autry has admitted in the administrative proceedings below that he was aware of, and subject to, the federally-mandated requirements that he maintain and possess both a commercial driver's license and the above-described medical examiner's certificate. In fact, defendant Autry obtained two separate medical certifications required by the above-quoted regulations, such certifications expiring January 18, 1998, and January 21, 2000.

In response to this allegation, Mr. Autry's answer admits that this is true. Consequently, he is bound by the regulations above set out, it is undisputed that he did not have a medical certificate, which was a prerequisite to obtaining a current driver's license, both of which were required under the Federal Regulations.

Additionally, we note that Mr. Autry completed a "MAINTENANCE/MECHANIC INTERVIEW CHECK LIST," which contained the following question and answer:

**CDL:** **Do you understand that your employment is contingent upon your maintaining a current Commercial Drivers License?**

**Yes**     **No**
✓

---

[3] 49 CFR 383.3

§ 383.3 Applicability.

(a) The rules in this part apply to every person who operates a commercial motor vehicle (CMV) in interstate, foreign, or intrastate commerce, to all employers of such persons, and to all States.

49 CFR 383.5

§ 383.5 Definitions.

As used in this part:

Commerce means (a) any trade, traffic or transportation within the jurisdiction of the United States between a place in a State and a place outside of such State, including a place outside of the United States and (b) trade, traffic, and transportation in the United States which affects any trade, traffic, and transportation described in paragraph (a) of this definition.

We agree with his contention that there is substantial material evidence that Mr. Autry was released to return to work by Dr. Daniel R. Smith, a premier authority in the area of Narcolepsy. However, it seems to us that the doctor would only be able to assess whether Mr. Autry was physically able, and not whether he was legally able.

It is clear under the Code of Federal Regulations that Mr. Autry could not drive a commercial vehicle without a current driver's license, nor without a current medical examiner's certificate that he was qualified.

<u>49 CFR 383.23</u>

**§ 383.23 Commercial driver's license.**

. . . .

(2) Effective April 1, 1992, except as provided in paragraph (b) of this section, no person shall operate a commercial motor vehicle unless such person possesses a CDL which meets the standards contained in subpart J of this part, issued by his/her State or jurisdiction of domicile.

<u>49 CFR 391.41</u>

**§ 391.41 Physical qualifications for drivers.**

(a) A person shall not drive a commercial motor vehicle unless he/she is physically qualified to do so and, except as provided in § 391.67, has on his/her person the original, or a photographic copy, of a medical examiner's certificate that he/she is physically qualified to drive a commercial motor vehicle.

We also note, as did the Chancellor, that there is a procedure for Mr. Autry to challenge the denial of his medical certificate by Dr. McKinley Lundy, a qualified medical examiner. However, he chose not to avail himself of this procedure.

In conclusion, we reiterate that we are aware that Mr. Autry did not drive a bus on public roads, but only within the shop and around the building where he was employed. While the danger he might pose would certainly be greater if he operated a commercial vehicle on public roads, his condition nevertheless could prove a danger to fellow employees and to himself.

For the foregoing reasons the judgment of the Chancery Court is affirmed and the cause remanded for collection of costs below. Costs of appeal are adjudged against Gerald D. Autry.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE