IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 3, 2003 Session

**TGJ & CO., INC. dba ARBY'S ROAST BEEF RESTAURANTS v.
MICHAEL E. MAGILL, COMMISSIONER, DEPARTMENT OF LABOR
AND WORKFORCE DEVELOPMENT, ET AL.**

**Appeal from the Chancery Court for Knox County
No. 154763-1    John F. Weaver, Chancellor**

**FILED AUGUST 28, 2003**

**No. E2003-00298-COA-R3-CV**

Margaret E. Bowers ("the Claimant") appeals the judgment of the trial court, which reversed an administrative determination of the Commissioner of the Department of Labor and Workforce Development ("the Commissioner"). The Commissioner had held that the Claimant is eligible for unemployment compensation as a result of the termination of her employment with TGJ & Co., Inc. ("the Employer"). Because we hold that the Claimant voluntarily quit her employment without good cause, we affirm the trial court.

**Tenn. R. Civ. P. 3; Judgment of the Chancery Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Douglas A. Blaze, Nathaniel K. Cherry, Clinic Attorney, and Elizabeth Dilbeck, Clinic Attorney, Knoxville, Tennessee, for the appellant, Margaret E. Bowers.

Paul G. Summers, Attorney General and Reporter, and Warren A. Jasper, Assistant Attorney General, for the appellee, Michael E. Magill, Commissioner, Department of Labor and Workforce Development.

H. Bruce Guyton, J. Chadwick Hatmaker, and Robert L. Vance, Knoxville, Tennessee, for the appellee, TGJ & Co., Inc. dba Arby's Roast Beef Restaurants.

**OPINION**

## I.

The Claimant began her employment with the Employer on February 27, 2001. She was initially hired as a trainee for the position of restaurant manager at the Employer's Arby's Roast Beef Restaurants. Until August, 2001, the Claimant worked at the Employer's Broadway Street restaurant and earned $425 per week. The Claimant did not progress in her training as rapidly as had been anticipated. In August, she was moved to the Magnolia Avenue restaurant and then later to the Employer's Gay Street location. These last two moves were to lower volume restaurants where the Employer hoped the Claimant might be better able to master the requisite managerial skills. Because she was placed on the night shift at both locations, her salary increased to $450.

After being transferred to the Employer's Gay Street restaurant, the Claimant failed to properly close the restaurant on two straight evenings. The Claimant failed to turn off the ovens and warmers on one occasion, and on the next evening, she lost the register tapes recording the entire day's sales. The following day, the Claimant was informed by her supervisors that she would no longer be working for the Employer as a manager. Prior to these events, the Employer generally had not been pleased with the Claimant's progress as a manager in training. She was late or absent from work an unacceptable number of times. Nevertheless, no disciplinary action was taken against her. A witness for the Employer testified that the training process for managers normally lasts 12 to 14 weeks. In the Claimant's case, her training was ongoing when her job as manager ended on November 7, 2001, some 10 months after she was hired.

After informing the Claimant that she would no longer be a manager, the supervisors proposed continued employment to the Claimant as an hourly worker. The Claimant testified that she was too upset at the time to listen to the Employer's proposition regarding her continued employment. The Claimant further testified that because the Employer's policies did not allow for any guaranteed number of hours as an hourly worker, she would not find any offer to be acceptable work. From the Claimant's experience as a manager, most hourly workers made $6.25 while shift leaders made $7.00. She testified that hourly workers generally did not work full 40-hour weeks.

The Employer did not require the Claimant to make an immediate decision regarding a new job assignment. This apparently was in deference to her upset state. The Claimant was given time to decide what she wanted to do. If she were willing to accept a new position, she was to report for reassignment. The Claimant left the Employer's restaurant and never returned.

## II.

The Claimant filed for unemployment compensation benefits on November 27, 2001. On her initial application for benefits, she stated that she quit her job at Arby's. The Claimant's application for unemployment benefits was granted by an Agency Decision. The Employer pursued review with the Appeals Tribunal which held a hearing and made findings of fact and conclusions of law. The Appeals Tribunal upheld the Agency Decision. The Employer then appealed to the Board of Review which affirmed and adopted the findings and conclusions of the Appeals Tribunal.

As previously mentioned, the Employer then appealed to the Chancery Court which reversed, holding that "the [C]laimant's termination of her discussion with her employer concerning her willingness to work at lesser employment status, commensurate with her abilities, together with her failure to make herself available to discuss her continued employment and to report back to work, constitutes the failure, without good cause, to make herself available for work."

III.

The decision of the Appeals Tribunal, adopted by the Board of Review, states in pertinent part, as follows:

> On November 27, 2001, the [C]laimant field an initial claim for unemployment benefits which was approved. On December 20, 2001, the above mentioned employer was notified of the approval of the claim and on December 27, 2001, filed an appeal against the payment of benefits to the [C]laimant on the basis that the claimant should be disqualified for either voluntarily quitting without good cause connected to work under [Tenn. Code Ann.] § 50-7-303(a)(1) or for being discharged for misconduct connected to work under [Tenn. Code Ann.] § 50-7-303(a)(2). After due notice to all interested parties, a hearing was scheduled on this case in Knoxville, TN, on Wednesday, February 13, 2002, at which time [C]laimant testified .... After carefully considering the testimony and the entire record in the case, the Appeals Tribunal makes the following:
>
> FINDINGS OF FACT: Claimant's most recent employment prior to filing this claim was with Arby's from February 2, 2001 until November 15, 2001 as a restaurant manager. The employer had problems with the [C]laimant's attendance as she was absent or late for work. Despite the problem, the [C]laimant was not given a written warning that her job was in jeopardy due to her attendance problem. The [E]mployer also had problems with the [C]laimant's work performance as she had difficulty . . . learning how to run the restaurant. The [C]laimant made [a] number of mistakes as she lost the register tape and inadvertently left the store oven on before closing the store. As a result of these problems, the decision was made to terminate the [C]laimant's position as manager. The [C]laimant was informed that she could accept another position as a regular employee, but the [C]laimant declined the position.
>
> CONCLUSIONS OF LAW: The Appeals Tribunal finds that [C]laimant is eligible to receive unemployment compensation benefits. The issue is whether the [C]laimant was discharged for

-3-

work-related misconduct under [Tenn. Code Ann.] § 50-7-303(a)(2). Misconduct is intentional behavior or conduct by an employee that materially breaches a duty the employee owes to the employer. While the [C]laimant owed the duty to be at work on time for her scheduled shift as well as the duty to abide by the company's attendance policy, there is no evidence in the record that [C]laimant was given any written warnings that her job was in jeopardy because of her attendance problem. Also, the [C]laimant owed the duty to properly perform the job duties assigned to her. However, the [C]laimant was merely not able to comprehend and perform the job duties of a manager. The [C]laimant made mistakes and did not meet the company standards in performing her job duties as a manager. Thus, the claimant was in essence terminated for unsatisfactory work performance. . . . The [E]mployer has failed to meet its burden of proof and the record fails to establish work-related misconduct under [Tenn. Code Ann.] § 50-7-303(a)(2).

DECISION: The Agency Decision is affirmed. The [C]laimant is eligible for unemployment benefits. The [E]mployer appeal is denied.

IV.

On appeal, the Claimant contends (1) that she was, as the Commissioner repeatedly held, terminated by the Employer, *see* Tenn. Code Ann. § 50-7-303(a)(1) (Supp. 2002); (2) that she did not engage in any misconduct resulting in termination as defined in Tenn. Code Ann. § 50-7-303(a)(2) (Supp. 2002); (3) that she did not fail without good cause to accept suitable work from the Employer, *see* Tenn. Code Ann. § 50-7-303(a)(3) (Supp. 2002); and (4) that the trial court abused its discretion and made unsupported findings of fact in reversing the Commissioner's determinations.

V.

Trial courts and appellate courts employ the same standard of review when reviewing decisions of administrative agencies. **Armstrong v. Neel**, 725 S.W.2d 953, 955 n.1 (Tenn. Ct. App. 1986). The standard, framed in terms of the trial court's review and as applicable to the case before us, is as follows.

The chancellor may affirm the decision of the board or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

\* \* \*

-4-

(E) *Unsupported by evidence which is both substantial and material in the light of the entire record.*

(3) *In determining the substantiality of evidence, the chancellor shall take into account whatever in the record fairly detracts from its[1] weight, but the chancellor shall not substitute the chancellor's judgment for that of the board of review as to the weight of the evidence on questions of fact. . . .*

Tenn. Code Ann. § 50-7-304(i)(2)-(3) (1999) (emphasis added). It is well-settled that the issue of whether an employee has voluntarily quit his or her employment without good cause is a question of law upon which we may make an independent determination based upon the facts in the record. ***Cooper v. Burson***, 221 Tenn. 621, 626-67, 429 S.W.2d 424, 426 (1968); ***McPherson v. Stokes***, 954 S.W.2d 749, 751 (Tenn. Ct. App. 1997); ***Long v. Traughber***, No. 1380, 1991 WL 25917, at * 2 (Tenn. Ct. App. E.S., March 4, 1991). We are required to construe the disqualification provisions of Tenn. Code Ann. § 50-7-303 liberally in favor of employees. ***Simmons v. Culpepper***, 937 S.W.2d 938, 944 (Tenn. Ct. App. 1996).

## VI.

Generally speaking, Tennessee employment security laws were enacted to alleviate economic insecurity due to unemployment caused by no fault of the employee. *See* Tenn. Code Ann. § 50-7-102 (1999); *see also* ***Ford v. Traughber***, 813 S.W.2d 141, 143 (Tenn. Ct. App. 1991). However, Tenn. Code Ann. § 50-7-303(a) lays out circumstances that disqualify employees from receiving unemployment benefits. That subsection provides, in pertinent part, as follows:

DISQUALIFYING EVENTS. A claimant shall be disqualified for benefits:

(1) If the administrator finds that the claimant has left such claimant's most recent work voluntarily without good cause connected with such claimant's work. . . .

(2) If the administrator finds that a claimant has been discharged from such claimant's most recent work for misconduct connected with such claimant's work, . . .

(3) If the administrator finds that the claimant has failed without good cause, either to apply for available, suitable work, when so directed by the employment office, or the administrator, or to accept suitable work when offered. . . . In determining whether or not any work is

---

[1]As we read this sentence, "its" refers to the evidence supporting the decision reached by the Commissioner.

suitable for a claimant, the administrator shall consider the degree of risk involved to the claimant's health, safety and morals, the claimant's physical fitness and prior training, the claimant's experience and prior earnings, the claimant's length of unemployment and prospects for securing local work in the claimant's customary occupation, and the distance of the available work from the claimant's residence. . . .

*Id.*

VII.

The language of Tenn. Code Ann. § 50-7-304(i)(3) – as set forth and emphasized in Section V of this opinion – does not appear to have been extensively discussed in the appellate decisions of this state. We have previously stated that this language simply means "our review in this case involves a determination of whether there is substantial and material evidence to support the [Commissioner's] legal conclusion . . . ." *Simmons*, 937 S.W.2d at 943. We have also stated that the evidence adduced below must be "both substantial and material in light of the entire record." *Estate of Milton v. Comm'r*, No. 03A01-9710-CH-00449, 1998 WL 282919, at *1 (Tenn. Ct. App. E.S., May 19, 1998).

The United States Supreme Court, in discussing the concept of "substantial" evidence under the National Labor Relations Act, addressed the issue as follows:

> To be sure, the requirement for canvassing "the whole record" in order to ascertain substantiality does not furnish a calculus of value by which a reviewing court can assess the evidence. Nor was it intended to negative the function of the Labor Board as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect. Nor does it mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*. Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view.

*Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L. Ed. 456 (1951); *see also* *Coronet Foods, Inc. v. Nat'l Labor Relations Bd.*, 158 F.3d 782, 789

(4th Cir. 1998). We find the United States Supreme Court's view that reversal of an administrative board is appropriate when a "reviewing court . . . cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes" is a reasonable approach to the concept of "substantial" evidence. We adopt it as the general criteria to be applied in determining whether there is substantial evidence to support an administrative decision under the Tennessee unemployment compensation scheme.

Reviewing the record before us, we find one fact explicitly found by the Appeals Tribunal to be critical: "[T]he [C]laimant declined the position." However, as a matter of law, we draw a different conclusion as to the significance of this fact. As previously discussed, the Claimant refused to *discuss* the possibility of a new position with the Employer. As the Claimant testified, after learning that she would no longer be a manager, she became too distressed to talk about a new position with the Employer. When the Claimant left the Gay Street restaurant after being stripped of her managerial position, she presumably was still in the employ of the Employer. From the case of **Wallace v. Sullivan**, 561 S.W.2d 452 (Tenn. 1978), it is clear that a reduction in pay associated with a demotion in position does not necessarily amount to termination. *See id.* at 454. In the instant case, the Employer clearly advised the Claimant that she could continue to work for it. The *only* reason the details of her continued employment were not then spelled out was the Claimant's decision at that time that she did not want to discuss it. The Employer advised the Claimant that she could come back the next day and talk about her new position in detail. Being upset about a demotion, without more, cannot amount to good cause to quit or refuse a job. Furthermore, because the Claimant never pursued any further discussion about what this new position would entail, we have no way of knowing precisely what the offer would have involved. Although we are to construe the unemployment compensation statutes liberally in favor of the employee, we simply cannot charge employers with the responsibility of forcing current employees to listen to offers for alternative employment. Therefore, we hold that the Claimant quit her job without good cause.

We hold that the undisputed evidence of the inability or unwillingness of the Claimant to discuss other work at Arby's on the day she was relieved of her managerial duties and her failure to return to hear what her new job would entail so "detracts" from the substantiality of the evidence supporting the Commissioner's decision as to deprive that decision of a "substantial" evidentiary basis. Like the court below, we hold that the Claimant's unwillingness to discuss the details of a new position and her failure to report for this new position — due to no fault of the Employer — disqualifies her from eligibility for unemployment benefits pursuant to Tenn. Code Ann. § 50-7-303(a)(1) & (3).

VIII.

The ruling of the trial court is affirmed. Costs on appeal are taxed to the appellant, Margaret E. Bowers. This case is remanded to the trial court for collection of costs assessed there.

_____
CHARLES D. SUSANO, JR., JUDGE