Lewis WEAVER, Appellant,

v.

J. D. WALLACE, Commissioner of the Tennessee Department of Employment Security and United States of America, Appellees.

Supreme Court of Tennessee.

May 9, 1978.

Wm. C. Gosnell, Memphis, for appellant.

Sam J. McAllester, Jr., Nashville, for Commissioner Wallace.

Devon L. Gosnell, Memphis, for United States.

## OPINION

BROCK, Justice.

The plaintiff, Lewis Weaver, seeks to secure unemployment insurance benefits under the Tennessee Employment Security

Law, T.C.A., § 50–1301, et seq. The administrative agency denied his claim upon the ground that the plaintiff had been discharged for "misconduct connected with his work," and was, therefore, disqualified, under the provisions of T.C.A., § 50–1324 B(2), to receive benefits. The plaintiff sought review in the Chancery Court for Shelby County and that court affirmed the administrative decision. He then appealed to this Court.

The plaintiff was employed by the United States government at its defense depot in Memphis on May 28, 1974, as a fork lift operator and continued in that employment until he was discharged on April 24, 1975. This was his last employment prior to his application for the unemployment security benefits which are in dispute in this case. The United States government, the employer, acting through its proper officer, the Supervisory Personnel Clerk at the defense depot, stated that its reason for discharging the plaintiff was:

> "Separation processed at request of the Civil Service Commission for failure to meet the Commission's suitability standards for federal employment due to the following records of arrests and convictions:
>
>> "02–07–73 assault and battery . . $50.00 and sixty days; carrying a dangerous weapon . . . thirty days; 09–30–73 drunk . . . $50.00 bond forfeited; 08–13–74 possession of marijuana . . . eleven months and twenty-nine days deferred and $43.05."

The controlling federal statute, 5 U.S.C. § 8506 requires that state agencies such as the Tennessee Department of Employment Security in this case, when administering their unemployment insurance laws with respect to civilian federal employees, must accept as "final and conclusive" the findings made by the federal employing agency with respect to "the reason for termination of Federal service." *See McKeon v. Unemployment Compensation Bd.*, 195 Pa.Super. 69, 169 A.2d 332 (1961); 76 Am.Jur.2d *Unemployment Compensation* § 43 (1975).

Accordingly, the administrative agency accepted the above quoted statement of the reason for the plaintiff's discharge as fact and reached the legal conclusion that the plaintiff's record of arrests and convictions there recited constituted "misconduct connected with his work." However, the Chancellor, in affirming the action of the administrative agency, based his decision upon an altogether different ground, i. e., that the plaintiff had been discharged by his federal employer for misconduct connected with his work "in that he failed to truthfully answer the questions on application for employment." We conclude that the decisions of the Chancery Court and of the administrative agency were erroneous.

First, the Chancellor was required to accept as "final and conclusive" the findings of the federal employing agency concerning the reason for the plaintiff's discharge from his federal employment, as shown by the statute and authorities, *supra.* Accordingly, he was not free to determine that the reason for the plaintiff's discharge was his alleged failure to truthfully answer the questions on his application for employment, but, instead, was bound to accept the statement by the federal employing agency that the reason for plaintiff's discharge was the record of arrests and convictions set out above.

Did the reasons ascribed by the federal employing agency for the plaintiff's discharge amount to "misconduct connected with his work?" This determination is to be made by state agencies applying state law. *McKeon v. Unemployment Compensation Board, supra; Saulls v. Employment Security Agency*, 85 Idaho 212, 377 P.2d 789 (1963). We hold that they did not. The unemployment compensation statutes were enacted for the benefit of unemployed workmen and are to receive a liberal interpretation by the courts. *Milne Chair Company v. Hake*, 190 Tenn. 395, 230 S.W.2d 393 (1950). The disqualification because of "misconduct connected with their work" provision, being penal in nature, is to be construed liberally in favor of the employee so as to minimize the penal character of the

provision by excluding cases not clearly intended to be within the exception. *Cheese v. Afram Brothers Company*, 21 Wis.2d 8, 123 N.W.2d 553 (1963); *Ciufo v. Brown*, La., 148 So.2d 459 (1963); *Spaulding v. Florida Industrial Commission*, Fla.App., 154 So.2d 334 (1963); 81 C.J.S. *Social Security* § 222 (1977).

There are few reported decisions delineating the scope of the phrase "misconduct connected with the work" but the general outline of the scope of the intended disqualification is well stated at 81 C.J.S. *Social Security* § 222 (1977), as follows:

"Depending on the specific provisions of the statute, in order to disqualify an employee for unemployment benefits his misconduct must be in the course of his most recent work, connected with his work, or connected with the employment. Under such provisions, it is not necessary that the act of misconduct occur during the working hours or at the place of employment, so long as it is connected with the employment, and the fact that misconduct relates to the private life or off-duty activities of the employee does not necessarily preclude its having a connection with the employment requisite to bar the right to compensation. Ordinarily, however, an employee's conduct off the working premises or outside the course or scope of his employment is not considered as misconduct in connection with employment."

In our opinion, the standard to be applied is that of the employment contract, whether express or implied, which fixes the employee's duties in connection with his work; an essential element of "misconduct connected with the work" is a breach of duty owed to the employer, as distinguished from society in general. *Detterer v. Unemployment Compensation Board of Review*, 168 Pa.Super. 291, 77 A.2d 886 (1951);

*Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (1941); Kempfer, *Disqualifications for Voluntary Leaving and Misconduct*, 55 Yale L.J. 147, 163 (1945).[1] Unless the employee's wrongdoing violates a duty owed to the employer, it cannot amount to that "misconduct *connected with his work*" which serves to disqualify him to receive unemployment insurance benefits, although it may fully justify the employer in discharging him.

Applying these standards, we now consider whether the record of arrests and convictions of the plaintiff, cited by the federal employing agency as a reason for his discharge, amounts to "misconduct connected with his work." The meagerness of the record concerning the reasons for the plaintiff's discharge renders our task more difficult and, in this connection, it must be remembered that the burden of proving a disqualification to receive benefits is on the employer.

With respect to the offenses of assault and battery, carrying a dangerous weapon and "drunk" we conclude that, in the circumstances presented here, these can in no sense be considered to be misconduct connected with the plaintiff's work because they predated the plaintiff's employment by the United States government. Obviously, an employee's wrongdoing if committed prior to his employment with his last employer can in no sense be considered to be "misconduct connected with his work" for that employer. *Employment Security Commission v. Acosta*, 93 Ariz. 120, 378 P.2d 929 (1963).

Thus, the question is reduced to whether the plaintiff's arrest and conviction for possession of marijuana and his suspended sentence of 11 months and 29 days imprisonment and payment of costs of $43.05 amounts, under the circumstances of this case, to "misconduct connected with his

---

1. In *Wallace v. Stewart*, Tenn., 559 S.W.2d 647 (1977) we discussed "misconduct connected with the work" as it pertains to absenteeism.

work." The only evidence in the record concerning the circumstances of this offense indicate that the charge was based upon the discovery by police officers of marijuana in the residence of the plaintiff. There is no evidence that this offense in any way involved the violation of any duty owed to the employer. Therefore, we conclude that the record fails to contain any evidence that this offense amounts to misconduct connected with the plaintiff's work. Accordingly, we hold that the trial court and the administrative agency erred in concluding that the plaintiff was disqualified from receiving unemployment insurance benefits.[2]

## II

■ Because the United States of America was the employer of the plaintiff employee, it was named a party defendant in the petition for certiorari filed in the Chancery Court to review the action of the administrative agency, the joinder as a defendant of the employer being required by T.C.A., § 50–1325(I), which provides for appellate review of adverse administrative decisions as follows:

"Filing a petition for certiorari in the chancery court of the county of such party's residence against the commissioner for review of such decision, in which petition any other party to the proceeding before the board of review shall be made a defendant and duly served with process. For the purposes of this subsection, the parties to the proceeding before the board of review shall be deemed to include the original claimant or applicant

for benefits, and each and every employer from whom such claimant received . . any wages for insured work, whether or not any such party appeared and participated in the proceeding before the board of review; and all such parties shall be deemed necessary parties to any petition for certiorari filed pursuant to this subsection."

The first response of the United States to the petition for certiorari was an answer which responded to the allegations of the complaint on the merits and did not raise any issue respecting jurisdiction or the consent of the United States of America to be sued. This answer was filed on July 7, 1976. However, on January 19, 1977, the United States of America filed a motion to dismiss the complaint "on the basis that the petition fails to state any jurisdictional basis for its suit against the United States." The Chancellor granted this motion to dismiss the United States as a party defendant in the same order in which he decided the case on the merits.

Of course, there is no doubt of the sovereign immunity of the United States from suit, *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941), but the question presented is whether that immunity has been waived by the Congress through its enactment of 5 U.S.C. § 8502 providing for a federal employees employment program. The statute provides that the United States may enter into an agreement with a state, or with an agency administering the unemployment compensation law of a state, under which the agency

2. We are not to be understood as questioning in any way either the propriety or the right of the plaintiff's employer to discharge him because of his record of arrests and convictions; we merely decide the issue whether his discharge for that reason amounts to "misconduct connected with his work."

It should be noted too, in all fairness to the plaintiff, that he denies the alleged convictions for assault and battery and carrying a dangerous weapon and for "drunk." He admits the arrests upon these charges but contends that he appealed the conviction for assault and bat-

tery and carrying a dangerous weapon and that his convictions were reversed upon appeal; with respect to the "drunk" charge, he contends that his appearance bond was forfeited because he was unable to find the proper courtroom due to the remodeling of the courthouse in which his trial was to be conducted. However, for the purposes of deciding the case, we have assumed that the plaintiff was in fact convicted upon these charges since that was stated by the federal employing agency as the fact.

will pay compensation to federal employees who have lost their jobs in the same amount, and subject to the same conditions, as the compensation would be payable to them under the state unemployment compensation law. Subsection (d) of 5 U.S.C. § 8502 is particularly pertinent to this issue, in that, it provides:

> "A determination by a State agency with respect to entitlement to compensation . . . shall be subject to review in the same manner and to the same extent as determinations under the State unemployment compensation law . . . ."

In our opinion, this provision amounts to an implied, if not express, consent by the Congress for the United States to be sued to the extent necessary to provide "review in the same manner and to the same extent as determinations under the State unemployment compensation law." *Conrad v. Unemployment Insurance Appeals Board*, 47 Cal. App.3d 237, 120 Cal.Rptr. 803 (1975); *Constantopoulos v. New Hampshire Department of Employment Security*, 107 N.H. 400, 223 A.2d 418 (1966). *See also United States v. Hellard*, 322 U.S. 363, 368, 64 S.Ct. 985, 88 L.Ed. 1326 (1944); *Smith v. District Unemployment Compensation Board*, 140 U.S.App.D.C. 361, 435 F.2d 433 (1970). We agree with the statement of the New Hampshire court in the *Constantopoulos* decision, to wit:

> "It follows, therefore, that if the United States cannot be joined as party to this proceeding, neither the Superior Court nor this court could render a judgment which would bind it or its agency, the employer of plaintiff, and the review procedure provided by the State would be ineffective and nugatory. However, Congress has expressly stated that 'Any determination by a State agency with respect to entitlement to compensation . . . shall be subject to review in the same manner and to the same extent as determinations under the State unemployment compensation laws. . . .'
>
> "We hold that Congress has thus expressed a clear intent to subject the United States to appeal procedures and requirements of the State Unemployment

Compensation Act. In doing so it has necessarily waived the sovereign immunity of the United States to the extent necessary to make 'any determination by a State agency . . . subject to review in the same manner and to the same extent as determinations under the State unemployment compensation law.'" 223 A.2d at 422.

Accordingly, we conclude that the United States of America through the Act of Congress above cited has waived its immunity from suit to the extent necessary to administer the unemployment compensation laws for the benefit of federal employees and that the trial court erred in dismissing the United States from this suit upon the ground of immunity. The decree of the Chancery Court is reversed and this cause is remanded to the administrative agency for further proceedings consistent with this opinion.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.