# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 16, 2013

## RUBY BLACKMON v. EATON ELECTRICAL, ET AL.

### Direct Appeal from the Chancery Court for Shelby County
### No. CH-11-0673-2    Arnold G. Goldin, Chancellor

---

### No. W2012-02039-COA-R3-CV - Filed May 17, 2013

---

Appellant's claim for unemployment benefits was denied based upon a finding of work-related misconduct.  Appellant sought review in the chancery court, which upheld the decision of the Commissioner's Designee.  On appeal to this Court, Appellant claims that the chancery court erred in denying her request for a continuance and in affirming the decision of the Commissioner's Designee without considering the evidence which purportedly would have been introduced had a continuance been allowed.  We affirm the decision of the chancery court.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

J. Jeffrey Lee, Memphis, Tennessee, for the appellant, Ruby Blackmon

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General, Derek C. Jumper, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Labor and Workforce Development

## OPINION

## I. FACTS & PROCEDURAL HISTORY

Ruby Blackmon ("Appellant") was discharged from her employment at the Eaton Corporation ("Eaton") in Memphis, Tennessee, on September 29, 2010, and she filed a claim for unemployment compensation on October 15, 2010. In response to a request for separation information, Eaton explained that Ms. Blackmon was terminated for violating a known company policy, specifically, for "address[ing] a group of employees and call[ing] them '[a racial slur].'" Eaton stated that an investigation had been conducted in which Ms. Blackmon admitted the conduct.

In November 2010, the Tennessee Department of Labor and Workforce Development, Division of Employment Security (the "Agency") rendered its "Agency Decision" in which it denied Ms. Blackmon's claim for unemployment benefits, finding that Ms. Blackmon had violated company policy, that Ms. Blackmon was aware of such policy, and that her actions constituted "work-related misconduct" under Tennessee Code Annotated section 50-7-303 making her ineligible for unemployment benefits. The Agency's Decision was upheld by the Appeals Tribunal, and the Commissioner's Designee later affirmed the decision of the Appeals Tribunal.[1]

On April 10, 2011, Ms. Blackmon filed a "Petition for Judicial Rehearing" in the Shelby County Chancery Court, denying the use of a racial slur, and claiming that she was terminated in retaliation for complaining of sexual harassment by a manager. On August 9, 2012, the chancery court entered a "Memorandum and Order" affirming the decision of the Commissioner's Designee. The court concluded that the decision of the Commissioner's Designee was supported by substantial and material evidence and that there existed a reasonable basis in law to support his decision that Ms. Blackmon was terminated for work-related misconduct. Ms. Blackmon timely appealed to this Court.

## II. ISSUES PRESENTED

Ms. Blackmon presents the following issues, slightly restated, for our review:

1. Whether the trial court abused its discretion in denying Petitioner additional time to locate and secure crucial witnesses and counsel; and

---

[1]Ms. Blackmon filed a "Petition to Rehear" with the Commissioner's Designee, which was denied.

2.      Whether the trial court erred in determining that the Respondents/Appellees had met their burden in the absence of any countervailing proof.

Additionally, the Agency presents the following issue:

3.      Whether there is substantial and material evidence in the administrative record, and a reasonable basis in law, to support the Commissioner designee's decision that Petitioner is disqualified from receiving unemployment compensation benefits pursuant to Tenn. Code Ann. § 50-7-303(a)(2)(A) for work-related misconduct.

For the following reasons, we affirm the decision of the chancery court.

## III. DISCUSSION

### A. Continuance

On appeal, Ms. Blackmon first argues that the chancery court "abused its discretion when it denied [her] request for a continuance[.]" Ms. Blackmon claims that she "wished to present the testimony of several co-workers[] who were not present on the date of trial[,]" and that she "was not able to secure counsel and did not understand the necessity of preparing a record of the hearing for appeal."[2] She further claims that a continuance was appropriate because "she appeared completely unprepared for a hearing" and because the Agency would not have been prejudiced by a continuance.

"The granting or denial of a motion for a continuance lies in the sound discretion of the court." *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1977) (citing *Moorehead v. State*, 409 S.W.2d 357, 358 (Tenn. 1966)). "The ruling on the motion will not be disturbed unless the record clearly shows abuse of discretion and prejudice to the party seeking a continuance." *Id.* (citing *State v. Strouth*, 620 S.W.2d 467, 472 (Tenn. 1988)); *see also Comm'r of Dep't of Transp. v. Hall*, 635 S.W.2d 110, 111 (Tenn. 1982) ("[I]n order to show an abuse of discretion, the plaintiff must show some prejudice or surprise which arises from the trial court's failure to grant the continuance.") (citing *Brady v. State*, 584 S.W.2d 245 (Tenn. Crim. App. 1979)). Under the abuse of discretion standard, we must consider "(1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives." *State ex rel. Moore v. Moore*, No.

_____

[2]Ms. Blackmon's brief states, without citation to the record, that Ms. Blackmon secured counsel on August 16, 2012, one week after entry of the chancery court's order affirming the decision of the Commissioner's Designee.

W2007-01519-COA-R3-JV, 2008 WL 2687672, at *3 (Tenn. Ct. App. July 3, 2008) (citing *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000)). We are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." **Caldwell v. Hill**, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). In considering a motion for a continuance, trial courts should consider "(1) the amount of time the proceedings have been pending, (2) the reasons for the continuance, (3) the diligence of the parties seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted." **Burks v. Spurlin**, No. M2006-00122-COA-R3-CV, 2007 WL 1341769, at *2 (Tenn. Ct. App. May 7, 2007) (citing *Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003)).

As stated above, Ms. Blackmon claims that the trial court erred in denying her "request for a continuance[;]" however, the record lacks any evidence that Ms. Blackmon, in fact, made such a request before the trial court.[3] "The failure to request a continuance constitutes waiver." **State v. Vaughn**, No. M2006-01659-CCA-R3-CD, 2008 WL 110094, at *7 (Tenn. Crim. App. Jan. 9, 2008). In any event, insofar as Ms. Blackmon sought a continuance to present additional evidence, the trial court was limited to considering the evidence contained in the administrative record. **Gore v. Memphis Light, Gas and Water**, No. M2009-01237-COA-R3-CV, 2009 WL 4801703, at *5 n.3 (Tenn. Ct. App. W.S. Dec. 14, 2009) *perm. app. denied* (Tenn. June 18, 2010) (citing *Armstrong v. Magill*, No. W2003-00207-COA-R3-CV, 2004 WL 1462631, at *5 (Tenn. Ct. App. 2004)). Accordingly, Ms. Blackmon is not entitled to relief on this issue.

## *B. Limited Evidence Before Chancery Court*

As her second issue on appeal, Ms. Blackmon seems to argue that the trial court erred in upholding the decision of the Commissioner's Designee without a full presentation of evidence by Ms. Blackmon–i.e. including the evidence she would have attempted to submit had a continuance been allowed.[4] Based upon our above-conclusion regarding Ms. Blackmon's waiver of the continuance issue, and the trial court's inability to consider evidence outside of the administrative record, we likewise find that Ms. Blackmon is not

---

[3]The record contains neither a motion for a continuance nor a transcript of the chancery court proceedings from which we can determine whether an oral motion for a continuance was made. Moreover, the chancery court's "Memorandum and Order" contains no indication that Ms. Blackmon requested a continuance.

[4]Ms. Blackmon argues that she "was denied a proper opportunity to present her case based upon the trial court's abuse of discretion" and that "[i]f the agency decision was based upon two versions of facts and circumstances, a review of that decision should also be based upon two versions of facts and circumstances."

entitled to relief on this issue.

### C. Support for Decision of Commissioner's Designee

On appeal, the Agency contends that the trial court properly affirmed the decision of the Commissioner's Designee–that Ms. Blackmon's had engaged in work-related misconduct which disqualified her from receiving unemployment compensation benefits–because it was based upon substantial and material evidence and because it had a reasonable basis in the law.

In an appeal from an agency decision regarding unemployment compensation benefits, both the trial court and this Court apply the standard of review set forth in Tennessee Code Annotated section 50-7-304(i)(2):

> (2) The chancellor may affirm the decision of the commissioner or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusion or decisions are:
>
> > (A) In violation of constitutional or statutory provisions;
> > (B) In excess of the statutory authority of the agency;
> > (C) Made upon unlawful procedure;
> > (D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> > (E) Unsupported by evidence that is both substantial and material in light of the entire record.

"When the evidentiary basis of a decision involving an unemployment compensation claim is attacked, Tenn. Code Ann. § 50-7-304(i)(2)(D) and (E) direct the courts to review the entire record, including any proof that fairly detracts from the agency's decision, to determine whether it is arbitrary, capricious, characterized by an abuse of discretion, or unsupported by substantial and material evidence." *Armstrong v. Neel*, 725 S.W.2d 953, 955 (Tenn. Ct. App. 1986) (footnote omitted). The court may not substitute its judgment for that of the Commissioner's Designee as to the weigh of the evidence on questions of fact, and the decision of the Commissioner's Designee may not be reversed, remanded or modified except for errors affecting the merits of the final decision of the Commissioner's Designee. **Tenn. Code Ann. § 50-7-304(i)(3)**.

"[T]he burden of producing substantial and material evidence is not an onerous one." *Roberts v. Traughber*, 844 S.W.2d 192, 196 (Tenn. Ct. App. 1991). "Substantial and

material evidence simply means 'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" ***Id.*** (quoting *First Tenn. Nat'l Bank Ass'n v. Jones*, 732 S.W.2d 281, 283 (Tenn. Ct. App. 1987)).  In addition, "[c]ourts should not disturb a reasonable decision of any agency which has expertise, experience and knowledge in a particular field." ***Millen v. Tenn. Dept. of Labor and Workforce Dev.***, 205 S.W.3d 929, 932 (Tenn. Ct. App. 2006) (quoting *Ford v. Traughber*, 813 S.W.2d 141, 144 (Tenn. Ct. App. 1991)).

Because Tennessee's unemployment statutes were enacted for the benefit of unemployed workers, our Supreme Court has held that the statutes "should be construed liberally in the employee's favor and that the disqualification provisions in the statutes should be construed narrowly."  ***Armstrong***, 725 S.W.2d at 955 (citing *Weaver v. Wallace*, 565 S.W.2d 867, 869-70 (Tenn. 1978)).  An employer bears the burden of proving that an employee should be disqualified from receiving unemployment compensation benefits. ***Id.*** (citing *Weaver*, 565 S.W.2d at 870); *see also Cherry v. Suburban Mfg. Co.*, 745 S.W.2d 273, 275 (Tenn. 1988) ("[I]n order to establish a [work-related conduct] disqualification there must be shown a material breach of such duty which the employee owes to the employer.).

Tennessee Code Annotated section 50-7-303(a)(2)(A) provides that "[a] claimant shall be disqualified for [unemployment] benefits: . . . [i]f the administrator finds that a claimant has been discharged from the claimant's most recent work for misconduct connected with the claimant's work[.]" Section 50-7-303(b)(3)(A) defines "misconduct" to include:[5]

> (i) Conscious disregard of the rights or interests of the employer;
> (ii) Deliberate violations or disregard of reasonable standards of behavior that the employer expects of an employee;
> (iii) Carelessness or negligence of such a degree or recurrence to show an intentional or substantial disregard of the employer's interest or to manifest equal culpability, wrongful intent or shows an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employee's employer;
> (iv) Deliberate disregard of a written attendance policy and the discharge is in compliance with such policy;
> (v) A knowing violation of a regulation of this state by an employee of an employer licensed by this state, which violation would cause the employer to be sanctioned or have the employer's license revoked or suspended by this state; or

---

[5]Although not relevant to this appeal, section 50-7-303(b)(3)(B) lists certain conduct which *does not* qualify as "misconduct."

(vi) A violation of an employer's rule, unless the claimant can demonstrate that:

  (a) The claimant did not know, and could not reasonably know, of the rule's requirements; or
  (b) The rule is unlawful or not reasonably related to the job environment and performance[.]

Again, in this case, the Commissioner's Designee determined that Ms. Blackmon was discharged for misconduct connected with her work, as provided in Tennessee Code Annotated section 50-7-303(a)(2), and therefore, that her claim for unemployment compensation benefits was properly denied. Specifically, after reviewing the record, the Commissioner's Designee adopted the following findings of fact:

The Employer has a harassment-free workplace policy which prohibits offensive and hostile language.[6] The Claimant was made aware of the policy through her initial training.

The Claimant was involved in a lengthy verbal confrontation with a co-worker. Sometime after the argument concluded, the co-worker reported to a supervisor the Claimant murmured the "N" word under her breath as she walked away from the co-worker and the argument.

The Claimant was called into a meeting with her supervisor and the human resources representative. During the meeting, the Claimant asked how the co-worker could hear her say that word if she said it under her breath. The Claimant then told the supervisors that even if she had said the "N" word that everyone else on the production floor says the "N" word. The Claimant continued to repeatedly say the "N" word in the meeting, and the supervisor instructed her not to say the "N" word again because he was getting offended. The Claimant continued to say the "N" word. After an investigation, the Claimant was terminated for violating the Employer's harassment-free workplace policy.

---

[6]Eaton's "Harassment Free Workplace Policy" states that the company "will not tolerate any form of harassment in its workplaces." It generally defines harassment as "unwelcome or inappropriate behavior that interferes with or has the potential to interfere with job performance or the maintenance of a productive, professional work environment[,]" and it provides as an example of "harassment," "[l]anguage or comments that are offensive, including vulgarities."

In her appeal to the Commissioner's Designee, the Claimant now denies saying the "N" word under her breath and requests an additional hearing.

The chancery court then concluded that the decision of the Commissioner's Designee was supported by substantial and material evidence and that there existed a reasonable basis in law to support such. After reviewing the administrative record in this case, we affirm the decision of the chancery court.

At the hearing before the Appeals Tribunal, an Eaton supervisor testified that an incident occurred between Ms. Blackmon and a co-worker in September 2010. The supervisor questioned both employees; the employee accused Ms. Blackmon of using a racial slur towards her, and according to the supervisor, Ms. Blackmon admitted to him such conduct. According to the supervisor, when he spoke with Ms. Blackmon following the incident, Ms. Blackmon continued to use the slur. The supervisor stated that Ms. Blackmon knew that use of the racial slur was unacceptable because she, like all employees, had received a copy of Eaton's Work Free Harassment Policy.

At the hearing, Ms. Blackmon seemed to deny using the racial slur during the altercation with the co-worker;[7] however, she admitted using it an unknown number of times during the meeting with the Eaton supervisor, at least "because that was the word [an Eaton human resources manager] said [she] said." She also denied, in her "Claimant Separation Questionnaire," to being aware of the non-harassment policy until after the altercation at issue. At the Appeals Tribunal hearing, Ms. Blackmon claimed that the true motivation for her termination was four reports she made between January and June of 2010 regarding alleged sexual harassment by a manager. However, an Eaton human resources manager testified that Ms. Blackmon made a single report of alleged sexual harassment in February 2010–prior to her termination in September 2010–and that the allegation was investigated and deemed unfounded.[8]

---

[7]At one point in the hearing, Ms. Blackmon stated "Everybody in the whole warehouse uses the word [] even if I did say that." However, she then stated "I just told [the human resources manager] I know I didn't say the word because it was under, if she said I said it under my breath[] how did she supposed to hear it?" [sic]

[8]The human resources manager testified that Ms. Blackmon had accused her manager of looking at her breasts. However, she explained that, at the time of Ms. Blackmon's complaint, Ms. Blackmon was under suspicion of hiding a cell phone "down her blouse," and that Ms. Blackmon had previously been given "several written warnings . . . about misuse of cell phones." She testified that Ms. Blackmon "was solely released off of using the n word for one of her co-workers and violation [of] our company policy of Work Free Harassment."

Based upon our review of the administrative record, we find that reasonable minds could accept the evidence presented by Eaton to conclude that Ms. Blackmon was terminated for misconduct connected with her work. Accordingly, we find that the decision of the Commissioner's Designee–that Ms. Blackmon was terminated for engaging in work-related misconduct, which disqualified her from receiving unemployment compensation benefits–is supported by substantial and material evidence and finds a reasonably sound basis in law. Thus, we affirm the decision of the chancery court.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court. Costs of this appeal are taxed to Appellant, Ruby Blackmon, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.