IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 21, 2014 Session

## CLEMENTINE NEWMAN v. KARLA DAVIS, COMMISSIONER OF TENNESSEE DEPARTMENT OF LABOR AND WORKFORCE DEVELOPMENT, and MEMPHIS LIGHT, GAS, AND WATER

Direct Appeal from the Chancery Court for Shelby County
No. CH1115772      Arnold B. Goldin, Chancellor

No. W2013-00696-COA-R3-CV - Filed February 7, 2014

This is an appeal from the trial court's order, affirming the decision of the Designee of the Commissioner of the Tennessee Department of Labor and Workforce Development that Appellant/Employee was not qualified for unemployment benefits. Because there is substantial and material evidence in the record, and a reasonable basis in law, to support the Commissioner's Designee's decision, we affirm the order of the trial court. Affirmed and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Clementine Newman, Memphis, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Derek C. Jumper, Assistant Attorney General, for appellee, Tennessee Department of Labor and Workforce Development.

Imad I. Abdullah, Memphis, Tennessee, for the appellee, Memphis Light, Gas, and Water.

## OPINION

The relevant facts in this case are undisputed. On October 29, 1979, Appellant Clementine Newman was hired as an Accountant-in-Training by Memphis Light, Gas, and

Water ("MLGW").  In 1982, Ms. Newman was promoted to the position of Rate Analyst, a position she held until her employment was terminated on August 1, 2006.

On August 29, 2005, Ms. Newman called MLGW to report that she had been involved in a non-work-related vehicle accident, and that she would not be reporting to work.  On September 5, 2005, Ms. Newman completed MLGW's five-day absent form.  On September 12, 2005, she returned to work.  It appears from the record that Ms. Newman was not allowed to resume her job at that time because she failed to provide MLGW with a physician's statement, verifying her absence and clearing her to return to work.  MLGW informed Ms. Newman that she needed to provide a doctor's statement in order to be cleared by the company nurse to return to work.  MLGW did provide Ms. Newman with forms for her doctor to complete.  However, Ms. Newman did not respond; on December 7, 2005, Ms. Newman's supervisor, Marty Bond, contacted her to check her progress.  At that time, Ms. Newman informed Mr. Bond that she was unable to attend her scheduled physical therapy, but that she was expecting to be released soon to do so.  On January 4, 2006, Ms. Newman called MLGW to report that she was still not able to attend physical therapy. Except for her appearance on September 5, 2005, Ms. Newman continued to be absent from work.

When Ms. Newman had still not returned to work on March 15, 2006, Mr. Bond called Ms. Newman to check on the status of her absence from work.  The next day, Mr. Bond checked with MLGW's Insurance Department concerning any information that Ms. Newman may have supplied to substantiate her absence. Ms. Margaret Harrison, MLGW's Managed Care Coordinator, informed Mr. Bond that Ms. Newman had failed to provide any recent information regarding her absence.  As a result, MLGW's Insurance Department sent Family and Medical Leave Act ("FMLA") forms and Certificate of Health Care Provider forms to Ms. Newman and her treating physician for completion.  On March 17, 2006, Ms. Newman left a message for her supervisor, stating that she called, but she failed to leave any information concerning the status of her absence from work.  Consequently, on March 20, 2006, MLGW mailed Ms. Newman a letter instructing her to contact the office weekly to provide an update of her work status.  With the letter, MLGW enclosed additional copies of the FMLA and Certificate of Health Care Provider forms.

Ms. Newman did not immediately complete the forms that MLGW sent to her, and she continued to be absent from work. Rather, on March 24, 2006, Ms. Newman left a phone message for Mr. Bond, stating that she was still sick and requesting copies of all of MLGW's sick leave policies.  MLGW sent the requested policies to Ms. Newman on March 29, 2006.  Ms. Newman did not report to work, nor did she contact MLGW as instructed during the week of March 29, 2006.  The following week, on or about April 4, 2006, Ms. Newman sent MLGW a partially completed Absence/FMLA form, which allegedly did not contain the required health care provider certification. However, in the record, we find an April 20, 2006

Certification of Health Care Provider form, which was completed by Ms. Newman's treating physician, Dr. Raymond Gardocki. The April 10, 2006 certification indicates that Ms. Newman's condition is a "chronic condition requiring treatments." Despite this prognosis, Dr. Gardocki indicates that Ms. Newman is cleared to return to work on September 21, 2005. Regardless, on or about June 23, 2006, Dr. Gardocki completed a second Certificate of Health Care provider form. As discussed in more detail below, the June 23, 2006 certificate corrected the April 10, 2006 form, which was marked in the record as "Error [/S/ Dr. Gardocki's initials] 6/23/06."

On April 10, 2006, Ms. Newman called and requested additional forms and asked questions regarding completion of some of the forms. Three days later, on April 13, 2006, Ms. Newman called MLGW, but did not leave any information regarding her work status. On April 21, 2006, Ms. Newman called to say that she was still not attending physical therapy, but she did not return to work or offer to do so. At this time, Mr. Bond reiterated the importance of returning the physician's form, and Ms. Newman stated that the physician may have lost it, but that she would call to check on it. On April 28, 2006, Ms. Newman called MLGW to say that she would not be in to work the following week. On May 5, 2006, Ms. Newman left a message, stating that she would call back later; on May 12, 2006, Ms. Newman called MLGW to inform her supervisor that she would be out the following week.

On May 16, 2006, MLGW sent a letter to Ms. Newman instructing her to contact the Human Resources Services Office by May 25, 2006 to provide proper documentation of her absence from work. In the letter, MLGW reminded Ms. Newman of its Sick Leave and Salary Continuation Policy (Personnel Policy 22-12), which requires employees to provide a physician's statement on the fifth day of absence and each twentieth day thereafter. The letter warned that "failure to provide the required information will be considered job abandonment and will result in termination." In response to this letter, Ms. Newman called MLGW on May 19th and 26th, and on June 2nd, 9th, 18th, and 26th, stating that she would continue to be out on sick leave. Also, on June 26, 2006, Ms. Newman called and stated that she would be seeing her physician on June 29, 2006. On June 30, 2006, Ms. Newman called to say that she was scheduled for additional testing on July 7th and 21st, and that she would continue to be out on sick leave pending the results.

On June 23, 2006, MLGW received a second Certification of Health Care Provider form from Dr. Gardocki. The June 2006 certification corrected the April 2006 certification, which is discussed in greater detail above. While the April 2006 certification stated that Ms. Newman's condition was a "chronic condition requiring treatment," the June 2006 certification indicated that her condition was not chronic, and did not require treatment. The June 2006 certification excuses Ms. Newman from work only on those days that she was seen in Dr. Gardocki's office, i.e., September 8th and 20th, 2005, November 7, 2005, December 1,

2005, January 3, 2006, February 22, 2006, and June 7, 2006. Other than these dates, the certification indicates that Ms. Newman was cleared to work by Dr. Gardocki. The record indicates that in addition to Dr. Gardocki, Ms. Newman also sought treatment from several other physicians. Each of these doctors either released Ms. Newman from work on the days that she was seeing them, or did not release her from work at all. One of these doctors, Dr. Vasu, released Ms. Newman to return to work on December 13, 2005.

On July 17, 2006, MLGW held a meeting to discuss Ms. Newman's absence from work. MLGW subsequently decided to terminate Ms. Newman's employment effective August 1, 2006. MLGW sent Ms. Newman a letter on August 1, 2006, informing her that her employment had been terminated due to her failure to provide the necessary medical documentation to substantiate her extensive absence from work. Specifically, the letter explained that the medical documentation received from Ms. Newman's treating physician indicated that she had been released to work in September of 2005 and that her illness did not qualify as a "serious health condition," which made her ineligible for coverage under the FMLA:

> [T]he medical documentation you provided indicated that you were released to return to work in late September of 2005. Furthermore, your treating physician indicated that your illness did not qualify as a "serious health condition" therefore you were not eligible for coverage under the FMLA. The information you have provided failed to cover your extensive time away from work.

On September 29, 2006, Ms. Newman filed a claim for unemployment benefits with Karla Davis, the Commissioner of the Tennessee Department of Labor and Workforce Development (in her official capacity, and together with MLGW, "Appellees"). In her claim, Ms. Newman informed the Department that she was still unable to perform her usual job duties. On October 20, 2006, the Tennessee Department of Labor and Workforce Development's Employment Security Division (the "Agency") found that Ms. Newman had been forced to leave her most recent work because she was sick or disabled, but further held that in accordance with Tennessee Code Annotated Section 50-7-303(a)(1), she was not eligible for unemployment benefits until she returned to MLGW and offered to work as soon as she was able to work again and perform her duties. Ms. Newman subsequently appealed the Agency's decision to its Appeals Tribunal. The Appeals Tribunal scheduled a hearing for November 9, 2006. Ms. Newman attended the hearing, but refused to participate without an attorney; Ms. Newman informed the Appeals Tribunal that she wanted it to subpoena her medical records from her treating physicians. The Appeals Tribunal scheduled a second hearing for Ms. Newman on December 5, 2006. Ms. Newman appeared at the December 5

hearing, but again refused to participate without the aid of an attorney and without the subpoena of her medical records. Based upon her failure to participate, the Appeals Tribunal affirmed the Agency's decision.

Ms. Newman subsequently appealed to the Shelby County Chancery Court. The trial court remanded the case to the Appeals Tribunal to allow Ms. Newman the opportunity to subpoena the requested medical documentation. Ms. Newman's medical records were obtained, and the Appeals Tribunal scheduled a hearing for May 18, 2011. By letter ruling of May 20, 2011, the Appeals Tribunal held that Ms. Newman was not eligible for unemployment benefits because she had not satisfied all of the statutory requirements. Specifically, the Appeals Tribunal found that Ms. Newman had not satisfied the statutory requirement on two grounds. First, the Appeals Tribunal explained that in order to qualify for unemployment benefits, Ms. Newman was required to have no medical restrictions and to be able to return to her former duties at the time of filing for unemployment benefits. Because Ms. Newman had admitted that she was not capable of performing her usual job duties at the time she filed for unemployment benefits, the Appeals Tribunal determined that she was ineligible for unemployment benefits. Second, the Appeals Tribunal ruled that Ms. Newman was not eligible for unemployment benefits because MLGW had shown that Ms. Newman engaged in work-related misconduct under the statutory guidelines. Specifically, Ms. Newman had engaged in work-related misconduct by failing to provide MLGW with the required medical documentation to excuse her , which was a violation of MLGW's leave policy. The Appeals Tribunal found that, after 2005, Ms. Newman had stopped submitting medical documentation to her employer because her medical doctors had released her to return to work, and that Ms. Newman had failed to follow MLGW's leave policy. Consequently, the Appeals Tribunal affirmed the Agency's denial of unemployment benefits to Ms. Newman.

Ms. Newman then appealed the Appeals Tribunal's decision to the Commissioner's Designee.[1] By letter ruling of August 19, 2011, the Commissioner's Designee adopted the

_____

[1] The procedure for filing unemployment benefits claims and appeals is set out in full detail at Tennessee Code Annotated Section 50-7-304. We will not tax the length of this opinion to reproduce the entire statute here. However, we note that Section 50-7-304(e)(1) allows for Commissioner's Desginees as follows:

> The commissioner shall designate Tennessee licensed attorneys within the department of labor and workforce development to adjudicate appeals of the decision of the unemployment hearing officer. The individuals so designated shall be referred to as the commissioner's designees and will constitute a part of the department of labor and workforce development's

(continued...)

Appeals Tribunal's findings, and affirmed its decision. Although the Commissioner's Designee found that Ms. Newman had misunderstood the FMLA and how it interacts with unemployment law, the Commissioner's Designee framed the issue on appeal as "whether [Ms. Newman] left work due to an illness or injury, notified [MLGW] of the need to leave, and ha[d] been released to return to work without restrictions." The Commissioner's Designee found that Ms. Newman left work due to an illness or injury, and that she had notified MLGW. However, the Commissioner's Designee further found that Ms. Newman had been medically released to return to work since December 13, 2005, but that she had failed to return. The Commissioner's Designee stated that Ms. Newman's failure to return to work was disqualifying under the medical exception set out at Tennessee Code Annotated Section 50-7-303, regardless of Ms. Newman's subjective belief that she was not capable of performing her job at that time. The Commissioner's Designee further ruled that even if it was true that Ms. Newman could not perform her usual job functions when she filed for unemployment benefits, this was still disqualifying under the medical exception. The Commissioner's Designee ruled that the fact that Ms. Newman's employment had been terminated prior to her being released to return to work did not relieve Ms. Newman from her obligation to fulfill the final requirement, which was to return to MLGW and offer herself for work. Finally, the Commissioner's Designee found that Ms. Newman had voluntarily quit her job when she failed to return to work after being released by her doctors, and that this fact could also be disqualifying because Ms. Newman's personal belief that she could not perform her job duties is considered a personal reason to leave and not good cause connected to work.

On August 26, 2011, Ms. Newman petitioned the Commissioner's Designee to rehear her appeal. On September 26, 2011, the Commissioner's Designee ruled that the petition to rehear did not provide any additional, relevant information to be considered that was not included in its prior review, or that would affect the outcome of the case. Accordingly, the Commissioner's Designee denied Ms. Newman's petition to rehear.

On September 27, 2011, Ms. Newman filed a petition for judicial review in the Shelby County Chancery Court, requesting reversal of the Commissioner's Designee's decision. The Administrative Record was obtained, and the Chancery Court held oral argument on the petition on November 19, 2011. Following oral argument, by order of January 2, 2013, the Chancellor affirmed the Commissioner's Designee's decision, finding that the decision was supported by substantial and material evidence in the record. The Chancellor specifically adopted the following findings, which were made by the Commissioner's Designee:

---

[1](...continued)
    legal division.

[Ms. Newman] was involved in a car accident on August 20, 2005, and saw Dr. Gardocki who released her to return to work on September 21, 2005. [Ms. Newman] did not agree that she was able to return to work so she saw Dr. Vasu who released her to return to work on December 13, 2005. [Ms. Newman] saw several other doctors but none who took her off work or excused her from work for more than the day she was in his office. [Ms. Newman] was discharged on August 1, 2006, because she had not provided the Employer with medical information to excuse her nearly year-long absence and had not returned to work.

The Chancellor went on to hold that there was a reasonable basis in law to support the Commissioner's Designee's decision that Ms. Newman was ineligible for unemployment benefits. Specifically, the Chancellor adopted the following conclusions of law, which were made by the Commissioner's Designee:

The issue in this case is simple, whether [Ms. Newman] left work due to an illness or injury, notified her Employer of the need to leave, and has been released to return to work without restrictions. She must also show that once being released to return to work without restrictions that she did so within a reasonable time.

[Ms. Newman] left work due to an illness or injury. She notified her Employer. She has been medically released to return to work since December 13, 2005, and has not returned. This is disqualifying under the medical exception regardless of her belief that she was not capable of performing her job at that time. [Ms. Newman] does not qualify for unemployment benefits under the medical exception.

As a note for the record, [although] [Ms. Newman's] doctor believed she could have returned to work well before her firing date, [Ms. Newman] contends that she was unable to perform her usual duties on the date she filed her claim. Either [Ms. Newman] could perform her usual duties as her doctors found and she failed to return to the Employer and offer herself for work within a reasonable time or [Ms. Newman] was not able to perform her usual duties, as she contends, at the time she filed her claim which is also [] disqualifying under the medical

-7-

exception. Being terminated prior to being released to return to work does not relieve [Ms. Newman] of fulfilling the final requirement and returning to her Employer and offering herself for work.

She could also be considered to have quit her job based on job abandonment when she failed to return to work after being released. This would be disqualifying because her belief that she could not perform the job is considered a personal reason to leave and not good cause connected to work.

Even if this case had been considered as a discharge under T.C.A. §50-7-303(a)(2), the facts establish the claim would still have been disqualified as misconduct because [Ms. Newman] breached the duty owed to the Employer to return to work when she was released by the doctor. However, the Commissioner's Designee find[ing] the analysis as a voluntary leaving under T.C.A. §50-7-303(a)(1) is substantiated under the facts of this case.

Ms. Newman subsequently filed a motion for relief from judgment or, alternatively, to amend the judgment, requesting the Chancery Court to reconsider its findings that she was not eligible for unemployment benefits and to alter the order to exclude reference to discharge under Tennessee Code Annotated Section 50-7-303(a)(2). The Chancery Court denied Ms. Newman's motion for relief by order of February 13, 2013.

Ms. Newman appeals. She raises four issues as stated in her brief:

1. Whether the Plaintiff left work due to illness or injury.

2. Whether the Plaintiff's termination was lawful under the facts of this case.

3. Whether misconduct was an issue at the administrative hearing.

4. Whether the plaintiff voluntarily quit her job.

We perceive that there is one dispositive issue, which we state as follows:

Whether there is substantial and material evidence in the administrative record, and a reasonable basis in law, to support the Commissioner's Designee's decision to deny Ms. Newman unemployment benefits under Tennessee Code Annotated Section 50-7-303(a)(1)?

Before addressing the substantive issue, we first note that Ms. Newman has acted *pro se* throughout these proceedings. It is well settled that *pro se* litigants must comply with the same standards to which lawyers must adhere. As explained by this Court:

Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

*Jackson v. Lanphere*, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at \*3 (Tenn. Ct. App. Aug.12, 2011) (quoting *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)). With the foregoing in mind, we turn to address Ms. Newman's issue.

In an appeal from an agency decision regarding unemployment compensation benefits, both the trial court and this Court apply the standard of review set forth in Tennessee Code Annotated section 50-7-304(i)(2):

(2) The chancellor may affirm the decision of the commissioner or the chancellor may reverse, remand or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusion or decisions are:

(A) In violation of constitutional or statutory provisions;
(B) In excess of the statutory authority of the agency;
(C) Made upon unlawful procedure;
(D) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(E) Unsupported by evidence that is both substantial and material in light of the entire record.

"When the evidentiary basis of a decision involving an unemployment compensation claim is attacked, Tennessee Code Annotated Sections 50-7-304(i)(2)(D) and (E) direct the courts to review the entire record, including any proof that fairly detracts from the agency's decision, to determine whether it is arbitrary, capricious, characterized by an abuse of discretion, or unsupported by substantial and material evidence." *Armstrong v. Neel*, 725 S.W. 2d 953, 955 (Tenn. Ct. App.1986) (footnote omitted). The court may not substitute its judgment for that of the Commissioner's Designee as to the weight of the evidence on questions of fact, and the decision of the Commissioner's Designee may not be reversed, remanded or modified except for errors affecting the merits of the final decision of the Commissioner's Designee. Tenn. Code Ann. § 50-7-304(i)(3).

"[T]he burden of producing substantial and material evidence is not an onerous one." *Roberts v. Traughber*, 844 S.W.2d 192, 196 (Tenn. Ct. App.1991). "Substantial and material evidence simply means 'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Id*. (quoting *First Tenn. Nat'l Bank Ass'n v. Jones*, 732 S.W.2d 281, 283 (Tenn. Ct. App. 1987)). In addition, "[c]ourts should not disturb a reasonable decision of any agency which has expertise, experience and knowledge in a particular field." *Millen v. Tenn. Dept. of Labor and Workforce Dev.*, 205 S.W.3d 929, 932 (Tenn. Ct. App. 2006) (quoting *Ford v. Traughber*, 813 S.W.2d 141, 144 (Tenn. Ct. App. 1991)).

Because Tennessee's unemployment statutes were enacted for the benefit of unemployed workers, our Supreme Court has held that the statutes "should be construed liberally in the employee's favor and that the disqualification provisions in the statutes should be construed narrowly." *Armstrong*, 725 S.W.2d at 955 (citing *Weaver v. Wallace*, 565 S.W.2d 867, 869–70 (Tenn. 1978)). An employer bears the burden of proving that an employee should be disqualified from receiving unemployment compensation benefits. *Id*. (citing *Weaver*, 565 S.W.2d at 870); *see also* *Cherry v. Suburban Mfg. Co.*, 745 S.W.2d 273, 275 (Tenn. 1988) ("[I]n order to establish a [work-related conduct] disqualification there must be shown a material breach of such duty which the employee owes to the employer.").

As discussed above, in this case, the Commissioner's Designee determined that Ms. Newman was discharged for misconduct connected with her work, as provided in Tennessee Code Annotated section 50-7-303(a)(2), and therefore, that her claim for unemployment compensation benefits was properly denied. Specifically, Ms. Newman was found to have failed to comply with MLGW's Leave Policy to provide medical documentation to substantiate her extended leave of absence. In the alternative, Ms. Newman was deemed ineligible for unemployment benefits because she failed to satisfy the requirement for unemployment benefits under the medical exception of the Tennessee Employment Security

-10-

Law. The Chancery Court adopted these findings, which we are asked to review against the record on appeal. Before doing so, we pause to briefly discuss the applicability of the FMLA.

## FMLA

From our review of Ms. Newman's appellate brief, and from the findings of the Chancellor, *supra*, throughout these proceedings, Ms. Newman has maintained that her employment was unlawfully terminated, and that she was unlawfully denied unemployment benefits. We glean from Ms. Newman's arguments that she is of the opinion that because she was still receiving medical treatment at the time she filed for unemployment benefits, her leave was protected under the FMLA. As correctly noted by both the Commissioner's Designee and the trial court, it is clear that Ms. Newman "misunderst[ands] the FMLA and how it interacts with unemployment law." Ms. Newman argues that the termination of her employment was unlawful because she was protected under the FMLA. However, it is well settled that an employee's absence for an illness is not protected under the FMLA unless it constitutes a "serious medical condition." As that term is defined under the FMLA, a "serious medical condition" renders the employee "unable to perform the functions of his [or her] position." *Austin v. Shelby County Government*, 3 S.W. 3d 474, 478 (Tenn. Ct. App. 1999) (citing *Oswalt v. Sara Lee Corp*., 74 F.3d 91, 92 (5th Cir.1996); 29 U.S.C. § 2612(a)(1)). In *Austin*, this Court held that the plaintiff's absence from work was not protected under the FMLA where the evidence did not establish that the plaintiff was unable to perform the functions of his job, and where the certification form signed by his physician failed to indicate that the plaintiff's condition would require him to miss any work. *Id*.; *accord* *Brannon v. OshKosh B'Gosh, Inc.*, 897 F. Supp. 1028, 1037 (M.D. Tenn. 1995) (holding that the plaintiff's absences from work were not protected by the FMLA where the physician failed to find that the plaintiff should remain off work and, in fact, provided plaintiff with a "certificate to return to work or school."). Likewise, in the instant case, there is substantial and material evidence to support the finding that Ms. Newman failed to provide medical documentation demonstrating that she had a "serious health condition" that rendered her unable to perform her job functions. Her subjective belief that she was not able to perform these functions is not sufficient to satisfy the FMLA requirement. Here, the record indicates that MLGW received medical documentation from Ms. Newman's treating physicians. However, none of these doctors excused Ms. Newman from work except on those days that she was seen in their offices. Every doctor opined that Ms. Newman's condition did not qualify as a "serious health condition" under the FMLA. Accordingly, we can only conclude that Ms. Newman's leave was not protected under the FMLA.

## Misconduct

Tennessee Code Annotated Section 50-7-303(a)(2)(A) provides that "[a] claimant shall be disqualified for [unemployment] benefits: . . . [i]f the administrator finds that a claimant has been discharged from the claimant's most recent work for misconduct connected with the claimant's work [.]" There was no definition of misconduct in the unemployment compensation statutes at the time Ms. Newman was fired. However, a definition of "misconduct" was added to the unemployment compensation statutes, effective January 1, 2010, by Chapter 479 of the 2009 Public Acts of Tennessee. Section 50-7-303(b)(3)(A) now defines "misconduct" to include:

> (i) Conscious disregard of the rights or interests of the employer;
>
> (ii) Deliberate violations or disregard of reasonable standards of behavior that the employer expects of an employee;
>
> (iii) Carelessness or negligence of such a degree or recurrence to show an intentional or substantial disregard of the employer's interest or to manifest equal culpability, wrongful intent or shows an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employee's employer;
>
> (iv) Deliberate disregard of a written attendance policy and the discharge is in compliance with such policy;
>
> (v) A knowing violation of a regulation of this state by an employee of an employer licensed by this state, which violation would cause the employer to be sanctioned or have the employer's license revoked or suspended by this state; or
>
> (vi) A violation of an employer's rule, unless the claimant can demonstrate that:
>
> (a) The claimant did not know, and could not reasonably know, of the rule's requirements; or
> (b) The rule is unlawful or not reasonably related to the job environment and performance[.]

As set out above, Tennessee Code Annotated Sections 50-7-303(b)(3)(A)(iv) and (v) define misconduct to include an employee's "[d]eliberate disregard of a written attendance policy," or "[a] violation of an employer's rule." Although the foregoing definitions were

-12-

not in place at the time of the initial determination that Ms. Newman was disqualified from receiving unemployment benefits based upon misconduct, case law decided prior to the statutory amendment clearly indicates that an employee who violates a known company policy, or fails to follow any legal/reasonable employer directive, is considered guilty of work-related misconduct. For example, we have found that an employee who knowingly failed to follow her manager's directive to tuck in her shirt, in compliance with the company dress code, was not entitled to unemployment benefits when she was fired because she was guilty of work-related misconduct. *Hallowell v. Vestco, Inc.*, 2005 WL 1046795 (Tenn. Ct. App. May 4, 2005). Other examples of employees disqualified from receiving unemployment benefits for work-related misconduct include an employee who was asked by the employer to stop asking female co-workers out in violation of company policy but failed to do so; an employee who was dishonest with management when questioned about an improper voice mail left for his supervisor; and an employee who repeatedly failed to call in sick even though she had a valid excuse. *Ruff v. Neeley*, No. W2006-01192-COA-R3-CV, 2006 WL 3734641 (Tenn. Ct. App. Dec. 20, 2006), *perm. app. denied* (Tenn. May 21, 2007); *Schwartz v. Neely*, No. W2007-01862-COA-R3-CV, 2008 WL 539223 (Tenn. Ct. App. Feb. 28, 2008), *perm. app. denied* (Tenn. Aug. 25, 2008); *Stanford v. Commissioner*, No. W2004-02373-COA-R3-CV, 2005 WL 1833734 (Tenn. Ct. App. Aug. 2, 2005).

From our review of the record, there is substantial and material evidence to support the finding that Ms. Newman was in violation of MLGW's leave policy. As contained in the record, MLGW's Sick Leave and Salary Continuation Policy (Personnel Policy 22-12) requires all employees to provide a physician's statement verifying his or her disability on the fifth day of any absence and then each twentieth day thereafter. Although Ms. Newman did complete the required form on the fifth day of her absence, the record undisputedly indicates that she failed to provide a physician's statement verifying her disability every twenty days thereafter. Under Tennessee Code Annotated Section 50-7-303(b)(3)(A)(vi)(a), an employee's violation of an employer's rules may be excused if the employee "did not know, and could not reasonably know, of the rule's requirements." Unfortunately, that is not the case in the instant appeal. The record shows that on March 15, 2006, Mr. Bond called Ms. Newman to check on the status of her absence from work. The next day, March 16, 2006, Mr. Bond contacted MLGW's Insurance Department regarding any information supplied to substantiate Ms. Newman's absence. As a result of Mr. Bond's inquiry, the Insurance Department sent copies of its Leave Policy and the required Certificate of Health Care Provider forms to Ms. Newman, with instructions that the forms would need to be completed before she could return to work. When it did not receive the forms from Ms. Newman, MLGW mailed a letter to her, dated May 16, 2006, to remind her of her duty to provide proper documentation of her absence from work. This letter warned that "failure to provide the required information will be considered job abandonment and will result in termination." Ms. Newman does not dispute receipt of these letters; however, the record

clearly indicates that Ms. Newman failed to provide any medical documentation, which would excuse her prolonged absence from work. Rather, as discussed above, Ms. Newman's treating physician stated that she had been released to return to work in September of 2005 or, at latest, in December of 2005. The record simply does not support a finding that Ms. Newman had a justifiable reason for her extensive absence from work; thus, the finding of misconduct is supported by substantial and material evidence in the record. Misconduct is a disqualifying event under Tennessee Code Annotated Section 50-7-303(a)(2)(A).

Having determined that the finding of misconduct is sufficiently supported in the record, our normal course would be to pretermit discussion of any additional grounds for disqualification. However, Ms. Newman has made cogent arguments on appeal; accordingly, we will endeavor to thoroughly adjudicate this appeal and to fully explain the basis for our decision. To that end, we will briefly discuss why the medical exception to disqualification from unemployment benefits is not fertile ground for reversal of the trial court in this case.

**Medical Exception**

Tennessee Code Annotated Section 50-7-303(a)(1)(A) provides, in relevant part, that:

> (a) Disqualifying Events. A claimant shall be disqualified for benefits:
>
> (1)(A) If the administrator finds that the claimant has left the claimant's most recent work voluntarily without good cause connected with the claimant's work. The disqualification shall be for the duration of the ensuing period of unemployment and until the claimant has secured subsequent employment covered by an unemployment compensation law of this state, another state, or the United States, and was paid wages by the subsequent employment ten (10) times the claimant's weekly benefit amount. No disqualification shall be made under this section, however, if the claimant presents evidence supported by competent medical proof that the claimant was forced to leave the claimant's most recent work because the claimant was sick or disabled and notified the claimant's employer of that fact as soon as it was reasonably practical to do so, and returned to that employer and offered to work as soon as the claimant was again able to work, and to perform the claimant's former duties . . . . At the expiration of the period, if the claimant is not reemployed, the claimant shall be entitled to unemployment

-14-

benefits under this chapter, if otherwise eligible under this chapter. . . .

Whether Ms. Newman voluntarily quit her job, or whether she was discharged by MLGW, there is substantial and material evidence in the record to support the Commissioner's Designee's decision that she was not qualified for unemployment benefits under this section. As set out in the statute, in order to qualify for unemployment benefits, Ms. Newman was required to provide competent medical proof that she was forced to leave her most recent employment because she was sick or disabled, that she notified MLGW as soon as reasonably practical, and that she returned to MLGW and offered herself for work as soon as she was able to perform her former job duties without restrictions. Tenn. Code Ann. § 50-7-303(a)(1)(A).

Here, it is undisputed that Ms. Newman left work due to injury from her automobile accident, and that she notified MLGW of that fact. However, Ms. Newman failed to return to work when she was released by Dr. Gardocki in September or 2005, or at the latest when Dr. Vasu released her in December of 2005. Whether Ms. Newman disagreed with her physicians' opinion is not germane to the inquiry. Even if we assume, *arguendo*, that Ms. Newman was unable to return to work and that she could not perform her former job duties at the time she applied for unemployment benefits, this fact would still disqualify her from unemployment benefits under the statute. Tenn. Code Ann. §50-7-303(a)(1)(A). This is because the statute clearly requires Ms. Newman to be able to perform her job duties at the time she applies for unemployment benefits. *Id*. Accordingly, Ms. Newman clearly did not qualify for unemployment benefits either for failing to return to work within a reasonable time after being released and able to perform her job functions as stated by her physicians, or because she was unable to perform her job duties without restriction at the time she applied for benefits.

Because there is clear and convincing evidence in the record, and a reasonable basis in law to support the Commissioner's Designee's decision that Ms. Newman was not qualified to receive unemployment benefits, we affirm the order of the trial court, affirming the Commissioner's Designee's findings. The case is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed against the Appellant, Clementine Newman. Because Ms. Newman is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

_____
J. STEVEN STAFFORD, JUDGE

-15-